AVOYELLES SPORTSMEN'S LEAGUE, et al., Plaintiffs-Appellees Cross-Appellants,

v.

John O. MARSH, et al., Defendants-Appellants Cross-Appellees.

No. 85–4202.

United States Court of Appeals, Fifth Circuit.

April 2, 1986.

Maria A. Iizuka, Atty., Dept. of Justice, Appellate Sec., Lands Div., Edward J. Shawaker, Washington, D.C., for defendants-appellants cross-appellees.

James T.B. Tripp, Environmental Defense Fund, New York City, Charles Michael Osborne, McCormiskey & Richardson-Harp, New Orleans, La., for Environmental Defense Fund, et al.

Gaharan & Wilson, Donald R. Wilson, Jena, La., for Avoyelles, et al.

Before POLITZ, HIGGINBOTHAM, and JONES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

We hold today that federal statutes authorizing awards of litigation costs against the government when "appropriate" are limited to those portions of the litigation made necessary by government opposition to legitimate claims of the party seeking the award. An award is not appropriate for expenses incurred either in litigating an issue on which the government finally prevailed or in a phase of the litigation in which the party seeking an award was opposed only by other, non-governmental parties.

I

This case has a complex procedural history, which we need summarize only briefly.[1] In an effort to prevent the conversion of several thousand acres of undeveloped land in Avoyelles Parish, Louisiana to agricultural uses, several plaintiffs brought a citizen suit under the Clean Water Act, 33 U.S.C. §§ 1251–1376, against the owners of the land and against a number of Army Corps of Engineers and Environmental Protection Agency officials. Before this suit was brought, a consultant employed by the Corps had determined that about 35% of the tract in question was a "wetland" on which certain landclearing activities may not be conducted without a "section 404 permit" from the Corps or the EPA; at the time suit was filed, the owners were proceeding with landclearing activities on the remaining 65% of the tract.

On January 17, 1979, the district court issued a preliminary injunction halting all landclearing on the portion of the tract not already designated as a wetland and requiring the federal defendants to prepare a final wetland determination within sixty days. The EPA prepared the required determination and issued a report in which it concluded that approximately 80% of the tract was a wetland; in a brief final para-

---

1. For a more detailed account of the background, see *Avoyelles Sportsmen's League, Inc. v. Marsh (Avoyelles III)*, 715 F.2d 897, 900–03 (5th Cir.1983).

graph, the EPA also indicated what kinds of landclearing activities it then believed would require a section 404 permit.

The district court held two trials in which it reviewed the EPA's final wetland determination. After one trial, the court concluded that more than 90% of the tract was a wetland; after the other trial, the court held that a section 404 permit would be required for the landclearing activities in which the private defendants had been engaged.

On appeal, a panel of this court reversed in part. *Avoyelles Sportsmen's League, Inc. v. Marsh (Avoyelles III)*, 715 F.2d 897 (5th Cir.1983). The panel found that the district court had erred by conducting a de novo review of the EPA's wetland determination, proceeded to conduct its own review using the appropriately deferential standard, and reinstated the EPA determination that about 80% of the tract is a CWA wetland. *Avoyelles III*, 715 F.2d at 903–18.

■ The panel's disposition of the other principal issue, having to do with which activities would require a section 404 permit, was more complicated. In the district court, the federal defendants had asked that the Corps be allowed to exercise its "primary jurisdiction" over this question before any judicial review took place. *Id.* at 918.[2] The panel said that the district court "might have been well advised to agree" to this request. *Id.* at 919. Although the federal defendants had believed that the district court was wrong to take up the activities issue in the first place, they apparently were substantially satisfied with the district court's decision on the merits; in any event, they abandoned the primary-jurisdiction argument on appeal.

*See id.* at 920. Because the private defendants challenged various aspects of the district court's decision, however, the panel reviewed that decision and affirmed the judgment insofar as the district court had held that the private defendants' proposed landclearing activities required a section 404 permit. In arriving at this conclusion, the panel affirmed three of the district court's determinations, none of which had been challenged by the federal defendants on appeal. The panel stressed that "should a section 404 permit application be filed, the Corps will be free to apply its expertise to that permit determination without any constraint from the district court's injunctive determinations except those we have expressly affirmed." *Id.* at 930.

In January 1985, the district court approved an attorney fee award against the government under CWA § 505(d), 33 U.S.C. 1365(d).[3] The court awarded $104,000.00 in attorney fees and $5038.97 in other expenses to the plaintiffs Environmental Defense Fund and National Wildlife Federation and awarded $4000.00 in fees to the attorney for the plaintiff Avoyelles Sportsmen's League. On this appeal, both the plaintiffs and the federal defendants argue that the district court erred in calculating these awards.[4]

## II

The government argues that its liability for attorney fees should be limited to that part of the litigation that culminated in the January 17, 1979 preliminary injunction: after that point, it did not oppose the plaintiffs on any issue on which the plaintiffs ultimately prevailed. The government contends that it should not have to bear ex-

---

**2.** Under the doctrine of primary jurisdiction, a court should sometimes suspend the judicial process in order to allow an administrative body the opportunity to apply its expertise to issues before the court. For a discussion of the doctrine as it relates to this case, see *Avoyelles III*, 715 F.2d at 918–20.

**3.** Section 505(d) provides in part:
    The court, in issuing any final order in any action brought pursuant to this [citizen suits] section, may award costs of litigation (includ-

ing reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.

**4.** The plaintiffs argue that the district court erred in reducing the amounts requested for work performed by two of the three plaintiffs' lawyers. In light of our disposition of the case, we need not evaluate the appropriateness of the district court's decision to reduce these amounts.

penses that the plaintiffs incurred in litigating issues (a) on which the plaintiffs' position was finally rejected by the courts or (b) that were matters of dispute between the plaintiffs and the private defendants rather than between the plaintiffs and the government. The plaintiffs reply that a fee award for the whole case is appropriate because "the entire litigation—from our complaint to this Court's decision in *Avoyelles III*—is attributable to the federal defendants' failure to perform their duties under the Clean Water Act."

### A

Section 505 of the CWA provides that the court may "award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." [5] 33 U.S.C. § 1365(d). The Supreme Court has held that in this context "the term 'appropriate' modifies but does not completely reject the traditional rule that a fee claimant must 'prevail' before it may recover attorney's fees," *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983), and that this modification was a limited one. The legislative history shows "only that fees may be awarded to all parties who *prevail in part* as well as those who *prevail in full*," *id.*, 103 S.Ct. at 3279 (emphasis in original), leaving intact the usual rule that "no fee may be awarded for services on [an] unsuccessful claim," *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). The Supreme Court emphasized that waivers of sovereign immunity must be strictly construed in favor of the sovereign and that "historic fee-shifting principles and intuitive notions of fairness" remain operative when deciding whether a fee award is "appropriate." *Ruckelshaus*, 103 S.Ct. at 3277.[6]

Perhaps the most deeply rooted historic fee-shifting principle is that fee awards are ordinarily appropriate only as a penalty for having unnecessarily provoked or prolonged litigation. *See generally Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *id.* at 258–59, 95 S.Ct. at 1622. Accordingly, the D.C. Circuit has recently observed:

> The *Ruckelshaus* Court was ... clearly impressed by the potential inequity of forcing a defendant who had shown that he had not violated the law in any way to pay for his opponent's efforts. We believe that it would be an inequity similar in kind, if lesser in magnitude, to force a defendant who has completely vindicated his own position on a particular issue to pay for his opponent's efforts on that issue.

*Sierra Club v. E.P.A.*, 769 F.2d 796, 801–02 (D.C.Cir.1985) (citation omitted). Thus, the logic of *Ruckelshaus* requires that we deny attorney fees to these plaintiffs for expenses incurred in contesting the EPA determination that about 80% of the Avoyelles Parish tract is a CWA wetland. The government was the prevailing party on this issue, and a fee award against the government would be contrary to historic fee-shifting principles and intuitive notions of fairness.

### B

Similarly, it appears that it would be improper to award litigation costs against the government for work done in connection with the district court's trial on the activities issue. This court has already indicated that the federal defendants were on

---

5. Although the statute permits recovery of costs against "any party," these plaintiffs have not sought an award against the private defendants. We express no views on the principles that would be applicable in such a case. *Cf. Ruckelshaus v. Sierra Club*, 463 U.S. 680, 103 S.Ct. 3274, 3281 n. 12, 77 L.Ed.2d 938 (1983) (it may be proper to treat private parties differently than governmental entities, for "special care

[should be exercised] regarding the award of fees against private parties").

6. *Ruckelshaus* was itself a Clean Air Act case, but its interpretation of the term "appropriate" controls the construction of the same term in § 505(d) of the Clean Water Act and in a number of other federal statutes. *Ruckelshaus*, 103 S.Ct. at 3276 n. 1.

firm ground in asking the district court to postpone deciding which landclearing activities required a section 404 permit: "An initial determination by the Corps might have obviated the need for addressing some of the issues discussed in the district court's opinion and presently urged on appeal." *Avoyelles III*, 715 F.2d at 919 (footnote omitted). Had the government's administrative process not been bypassed over its objection, some or all of the plaintiffs' legitimate demands might have been met in that forum. Certainly, we cannot assume that the administrative process would have led the government to a legally untenable position. To the extent that fee awards are a penalty for unnecessarily provoking or prolonging litigation, however, an award in these circumstances would entail just that assumption.

Furthermore, a rule allowing plaintiffs to recover fees for work performed after the government has properly invoked the doctrine of primary jurisdiction would incite some plaintiffs to subvert the regular operation of the administrative process: any rule that offers a prospect of government subsidies for litigation costs, but not for participation in the administrative process, will tend to channel plaintiffs' efforts toward litigation without regard to whether a court is really the better initial forum. Absent a clear indication of legislative intent to create such an incentive, we do not see any reason to infer it from the statute's authorization of attorney fees when "appropriate." Because it appears that the federal defendants properly invoked the doctrine of primary jurisdiction on the activities issue, we doubt that the government should be liable to the plaintiffs for attorney fees incurred in a phase of the litigation into which the federal defendants were inadvisably and unwillingly drawn.[7]

The reasons justifying application of the doctrine of primary jurisdiction in this case were stated in *Avoyelles III*, 715 F.2d at 918-20. Because the federal defendants had abandoned the primary jurisdiction argument on appeal and because "no purpose would be served by vacating the district court's decision and remanding to the agency for the 'initial determination,'" *Avoyelles III*, 715 F.2d at 920, the panel declined to hold formally that the doctrine should have been applied by the district court. It could be argued that the government, having abandoned the primary-jurisdiction argument for purposes of the merits appeal, should be forbidden to revive the argument in the attorney fees phase of the case. This argument, however, misconceives the meaning of the government's decision not to raise the issue during the *Avoyelles III* appeal. At that late date, when the views of the relevant agencies had already transpired, applying the doctrine of primary jurisdiction would have required a remand to those same agencies for a fictionally "initial" determination. This would not have contributed in any way to the doctrine's purpose, which is to ensure that judicial decisions are made in the light of the expert views that the administrative process provides.

The government's sensible and proper abandonment of the primary-jurisdiction argument during the merits appeal should not expose it to attorney fees liability that it might otherwise have avoided. This would create an incentive for the government to press for application of primary jurisdiction after the point in litigation at which it is likely to yield any real benefits. To create this incentive would only serve to add another element of delay and redundancy to cases that are already excessively prone to unproductive procedural wrangling. Furthermore, such a rule might in-

---

7. The record suggests that the private defendants, but not the plaintiffs, opposed the government's position on primary jurisdiction. The source of the opposition, if any, to the government's position is, however, not relevant. Our question is not whether the plaintiffs or someone else was exclusively or primarily to blame for the district court's inadvisable trial on the activities issue. Rather, we must ask whether it would be "appropriate" under § 505(d) to penalize the government for another party's litigation costs in a trial that the government properly and unsuccessfully sought to avoid. For the reasons we have stated, such a penalty does not seem appropriate.

vite government lawyers in some cases to delay in soliciting agency views so that their primary-jurisdiction argument could remain viable as long as possible. We doubt that Congress intended to create such perverse incentives. Thus, because the government properly invoked the doctrine of primary jurisdiction on the activities issue, it may well be inappropriate to award attorney fees for a phase of the litigation that took place despite the government's apt and timely objection.

### C

■ Because the government never advanced the argument presented in Section II.B, *supra,* the plaintiffs have never had an opportunity to respond to it. We therefore decline to base our decision on that analysis, and we instead adopt the government's suggestion that the case be remanded. On remand, the district court will be free to consider the bearing of the primary-jurisdiction issue on the appropriateness of a fee award for the phase of the litigation that involved the activities issue.

Should the district court encounter compelling reasons not to adopt the primary-jurisdiction rationale for denying attorney fees, that court should determine whether and to what extent the federal defendants improperly opposed the plaintiffs on the activities issue after January 17, 1979. The *Ruckelshaus* approach, as elaborated in *Sierra Club v. E.P.A., supra,* precludes the court from forcing the government to pay the plaintiffs' expenses in litigating an issue on which they were opposed only by the private defendants: such an award would be manifestly unfair and contrary to historic fee-shifting principles. Because our review of the record suggests that it may not be easy to determine who was opposed to whom on the various aspects of this issue at each moment of the litigation, we take this opportunity to note that the burden will be on the plaintiffs to prove by a preponderance of the evidence that all their claimed expenses were incurred in opposing improper government resistance to their rightful demands.

### D

■ However the controversy over an award for the "activities" trial is resolved, no fees should be awarded against the government for expenses that the plaintiffs incurred in the *Avoyelles III* appeal. In that phase of the litigation, the government did not challenge any aspect of the district court's decision that was affirmed by this court. To the extent that the plaintiffs prevailed in *Avoyelles III,* they prevailed only over the private defendants, not the government. *See Avoyelles III,* 715 F.2d at 920–30. For reasons that we have already explained in Sections II.A and II.C, *supra,* the Supreme Court's approach in *Ruckelshaus* indicates that it would be inappropriate to hold the government liable for expenses incurred by the plaintiffs during this portion of the case.

### III

■ The core of the plaintiffs' argument is that they are entitled to attorney fees because they "accomplished what they set out to attain: the establishment of a jurisdictional framework under Section 404 of the Clean Water Act providing for federal defendants' regulation of agricultural clearing and conversion operations in the bottomland hardwood wetlands.... Plaintiffs' achievements—including their instrumental role in federal defendants' change of position—were sufficiently significant to entitle the district court not only to exercise its discretion to grant fees, but also to consider and recompense plaintiffs' efforts throughout the entire case, not just up to the point where defendants brought their position into line with that of plaintiffs."

This argument, which we reject, contains just enough truth to be potentially misleading. It is true that the attorney fees provision of the Clean Water Act was apparently intended to "encourage litigation which will assure proper implementation and administration of the act or otherwise serve the public interest." *See Ruckelshaus,* 103 S.Ct. at 3278 (quoting from the legislative history of the attorney fees provision of

the Clean Air Act). *Cf. id.* at 3275 n. 1. It is also true that federal defendants should not be able to insulate the government from all attorney fees liability simply by yielding to the plaintiff's demands after the litigation begins but before it proceeds to final judgment. *See id.* at 3278 n. 8. For that reason, the plaintiffs are right to argue against a rule implying that "regardless of the substantive outcome of a case relative to a plaintiff's position, fees are never 'appropriate' unless the positions taken by plaintiffs and defendants are at all times antagonistic, with plaintiffs prevailing over defendants at every step of the way."

The government has conceded, however, that an award of attorney fees *is* appropriate in this case. The federal defendants do not dispute the contention that until January 17, 1979, when the district court issued its preliminary injunction, the government had been remiss in enforcing the CWA and that the lawsuit initiated by these plaintiffs served the public interest by stimulating appropriate government action. After that injunction issued, however, the federal defendants fulfilled their obligation to make a final wetland determination, and the plaintiffs have not shown that government resistance to their legitimate claims caused any of the remainder of this protracted litigation.[8] The EPA's wetland determina-

tion itself was upheld in *Avoyelles III;* the litigation on the activities issue appears to have been caused partly by the district court's decision not to accept the government's primary-jurisdiction argument and was certainly caused at least in part by a dispute between the plaintiffs and the private defendants.[9]

The plaintiffs argue that they are entitled to an award against the government because they got what they wanted and what they wanted was in the public interest. This argument, which would lead to fee awards for what is essentially, if not technically, amicus curiae involvement in litigation, construes congressional intent in authorizing citizen suits and fee awards under CWA § 505 much too broadly. The plaintiffs have pointed to nothing in the legislative history of the CWA or similar statutes that directly supports so extravagant a reading of the term "appropriate" in CWA § 505(d). The plaintiffs' position neglects the important principle that waivers of sovereign immunity must be construed strictly in favor of the sovereign. *Ruckelshaus,* 103 S.Ct. at 3277. And the plaintiffs ignore the fact that when Congress has wished to permit fee awards designed for purposes radically different than those underlying traditional fee-shifting practices, it has known how do so in clear lan-

---

8. At oral argument, the plaintiffs strenuously urged that they played a valuable role in "supporting" the government's position after the EPA issued its final wetland determination. In very unusual circumstances, there might be grounds for an award against the government when such "support" was made necessary by the government's inability or refusal to support its own position properly. In the case at bar, however, the plaintiffs have not demonstrated that the federal defendants were unwilling or unable to do their own job. We express no view on the question of whether the plaintiffs' role in "supporting" the government might have qualified them for a fee award against the private defendants.

9. It is true, as the *Avoyelles III* panel pointed out, that "the parties in this litigation have 'changed positions as nimbly as if dancing a quadrille.'" 715 F.2d at 903 (footnote and citation omitted). At least some of this dancing around, however, went on between the plaintiffs

themselves and the private defendants. *See, e.g., Avoyelles III,* 715 F.2d at 903 n. 14. The federal agencies also changed their positions on a number of questions during the course of the litigation, but these changes appear to have involved the kinds of adjustments that an administrative agency normally and properly makes in the course of applying its expertise to complex factual situations. The record does not show that the federal defendants stubbornly adhered to untenable positions until the pressures of litigation forced them to adopt more reasonable views. *See, e.g., Avoyelles III,* 715 F.2d at 919 n. 37 (treating statements about "de minimis" discharges of pollutants in the EPA's final wetland determination as properly subject to revision during Army Corps of Engineers consideration of applications for section 404 permits); *id.* at 924 n. 43 (accounting for federal defendants' change of position on the activities issue in terms of "the agencies' changing view of the facts, rather than any alteration in their view of the law").

guage. *See, e.g.,* 15 U.S.C. § 2605(c)(4)(A) (authorizing fee awards, for participation in rulemaking proceedings, to certain persons who represent "an interest which would substantially contribute to a fair determination of the issues to be resolved in the proceeding").

## IV

We conclude that CWA § 505(d) and analogous statutes [10] do not authorize fee awards against the government for expenses that a plaintiff incurred in litigating issues on which the government finally prevailed or for expenses incurred by the plaintiff in portions of the litigation not made necessary by government opposition to a plaintiff's rightful claim. On remand, the district court will recalculate the fee award in accordance with the principles set forth in this opinion.

VACATED AND REMANDED.

---

**10.** *See Ruckelshaus,* 103 S.Ct. at 3275 n. 1.