**CHEMICAL MANUFACTURERS ASSOCIATION, et al., Petitioners,**

v.

**U.S. ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

Nos. 87–4849, et al.

United States Court of Appeals, Fifth Circuit.

Oct. 13, 1989.

Theodore L. Garrett, Corinne A. Goldstein, Jay T. Smith, Covington & Burling, Washington, D.C., for petitioners.

Doy Weitman, Office of General Counsel, Michael Wenig, David J. Kaplan, Washington, D.C., for respondent.

Ronald J. Wilson, Robert Wayne Adler, Washington, D.C., for intervenor: Natural Resources, etc.

PETITION FOR ATTORNEY'S FEES

Before RUBIN, GARZA, and KING, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The Natural Resources Defense Council, Inc. (NRDC) seeks a statutory award of attorney's fees [1] from the Environmental Protection Agency because it prevailed on some of the issues raised in litigation challenging the EPA's application of the Clean Water Act (CWA) to organic chemicals, plastics, and synthetic fibers (OCPSF) manufacturers.[2]

We hold that the NRDC is entitled to attorney's fees for work done on two issues on which it prevailed against the EPA, but is not entitled to fees for work on a third issue on which we upheld its position because on that issue the EPA and the NRDC took substantially the same position and the NRDC prevailed only against their common adversary, the Chemical Manufacturers Association (CMA); in calculating the hours reasonably spent by counsel, we

---

1. *See* 33 U.S.C. § 1369(b)(3) (1982 & Supp. V 1987).

2. *Chemical Mfrs. Ass'n v. EPA,* 870 F.2d 177 (5th Cir.1989).

refuse to deduct time spent by NRDC that was not directly attributable to issues on which it prevailed but pervaded the suit and without which it could not have successfully litigated; and we award the NRDC expenses incurred by counsel as part of their attorney's fees.

## I.

The EPA seeks to foreclose consideration of the attorney's fees issues by contending first that our statement in a memorandum to counsel accompanying the original opinion that each party would bear its own "costs" necessarily constitutes a denial of attorney's fees, and alternatively that the NRDC's motion for fees was not timely filed because Fed.R.App.Proc. 39(d) requires a bill of costs to be filed within 14 days after entry of judgment and the CWA characterizes "costs" as including attorney's fees.

### A.

By stating that each party was to bear its own costs, we did not rule inferentially that the NRDC was not entitled to attorney's fees. While we recognize many cases have considered whether attorney's fees are "costs" within the meaning of various statutes,[3] the two terms are not synonymous. Ordinarily, in the United States, a prevailing party is not entitled to recover attorney's fees in the absence of a statute (such as the CWA) allowing such an award.[4]

The more routine allocations of costs is also determined by statute, Fed.R.App. Proc. 39(d) and 28 U.S.C. § 1920, but is distinguishable from the recovery of attorney's fees. As used in Rule 39, "costs" merely refers to the expenses of docketing an appeal or preparing and filing briefs and records.[5] Moreover, although the structure of Rule 39(a) suggests that the allocation of costs ordinarily follows the ruling on the merits, when the results on appeal are mixed, then "costs should be allowed only as ordered by the court," and it is not necessary to determine whether a benefitting litigant has prevailed on any issue. Such a determination surely is necessary for the award of attorney's fees, however, thus differentiating the nature and practice of fee awards.[6]

### B.

The NRDC timely filed and we granted a motion for clarification of the decision concerning costs and for an extension of time within which to file a motion for attorney's fees and expenses. The motion is not, therefore, barred by Fed.R.App.Proc. 39(d). For this reason we need not consider the possible application of *Budinich v. Becton Dickinson and Co.*,[7] in which the Supreme Court held that "an unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final"[8] and that "the § 1291 effect of an unresolved issue of attorney's fees for the litigation at hand should not turn upon the characterization of those fees by the statute or decisional law that

3. *See, e.g., White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 449 n. 7, 102 S.Ct. 1162, 1165 n. 7, 71 L.Ed.2d 325 (1982); *Montgomery & Assoc., Inc. v. Commodity Futures Trading Comm'n*, 816 F.2d 783 (D.C.Cir. 1987) (Commodities Exchange Act); *Knighton v. Watkins*, 616 F.2d 795, 798 & 798 n. 2 (5th Cir.1980) (section 1988).

4. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

5. *See Kelley v. Metropolitan County Bd. of Educ.*, 773 F.2d 677, 681–82 n. 5 (6th Cir.1985) *cert. denied*, 474 U.S. 1083, 106 S.Ct. 853, 88 L.Ed.2d 893 (1988); *Seyler v. Seyler*, 678 F.2d 29, 31 (5th

Cir.1982); *Robinson v. Kimbrough*, 652 F.2d 458, 463 (5th Cir.1981); Fed.R.App.Proc. 39(c) ("costs of briefs, appendices, and copies of records"), (e) ("costs incurred in the preparation and transmission of the record, the cost of the reporter's transcript," and provisions for costs of bonds); *see also Knighton*, 616 F.2d at 798 n. 2 (distinguishing Rule 54(d) "costs" from attorney's fees).

6. *See Kelley*, 773 F.2d at 681–82.

7. 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988).

8. 108 S.Ct. at 1721–22.

authorizes them." [9]

## II.

The CWA provides, "[i]n any judicial proceeding under this subsection, the court may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party whenever it determines that such award is appropriate." [10] Although this specific provision has not often been construed, the courts have made it clear in cases arising under statutes containing similar provisions for fee shifting that an award is usually "appropriate" when a party has advanced the goals of the statute invoked in the litigation.[11] The NRDC claims that an attorney's fee award is appropriate in this case because it prevailed on three substantial issues that advanced the goals of the CWA.

■ The NRDC correctly maintains that it prevailed in its challenge to the EPA's subcategorization of plants into two groups, $BAT_1$ and $BAT_2$, for the development of effluent limitations based on the Best Available Technology (BAT). We agreed with the NRDC's argument that "[t]he EPA violated the notice and comment requirement of the Administrative Procedure Act by failing to publish for public comments its BAT subcategorization prior to final promulgation of the regulations." [12] We therefore "remand[ed] this issue to the EPA for notice-and-comment proceedings." [13]

A remand for notice-and-comment proceedings is of course a procedural remedy, ensuring only that interested parties will be advised of the Agency's proposed action sufficiently in advance that they can be given an adequate opportunity to comment on it and perhaps to induce the Agency to change it. In this case, however, the remand is not without substantive significance. We noted in our opinion on the merits that the NRDC had raised substantive as well as procedural challenges to the EPA's subcategorization, and that the subcategorization might lead to unnecessary pollution because "plants that can find a way to comply with the BAT limitations without installing end-of-pipe biological treatment systems are subject to the less stringent $BAT_2$ limitations." [14] The NRDC thus advanced the goal of reducing pollution, one central to the CWA, by obtaining an order that the EPA's subcategorization scheme be reviewed for possible modification after adequate notice and comment, and the NRDC is entitled to an award of attorney's fees for its work on this issue.[15] Procedural remedies of this sort are to be distinguished from "purely procedural victories," which the Court has indicated would likely not justify an award of fees.[16]

■ The NRDC also prevailed in its challenge to the EPA's New Source Performance Standards (NSPS). We accepted the NRDC's argument "that the agency did not adequately consider demonstrated new technologies that go beyond the level of treatment of the BAT standards," stating:

> We know from the record that 36 plants in the industry use recycling and some of them achieve zero discharge. Thus, recycling easily fits the definition of an "available demonstrated technology" un-

9. 108 S.Ct. at 1721.

10. 33 U.S.C. § 1369(b)(3) (1982 & Supp. V 1987).

11. *See, e.g., Abramowitz v. EPA,* 832 F.2d 1071, 1079 (9th Cir.1987) (Clean Air Act); *Carson–Truckee Water Conservancy District v. Secretary of the Interior,* 748 F.2d 523, 524–27 (9th Cir. 1984) (Endangered Species Act), *cert. denied,* 471 U.S. 1065, 105 S.Ct. 2139, 85 L.Ed.2d 497 (1985); *Roosevelt Campobello Intern. Park v. EPA,* 711 F.2d 431, 438–39 (1st Cir.1983) (section 1365(d) of Clean Water Act).

12. *Chemical Mfrs.,* 870 F.2d at 186.

13. *Id.* at 236 (footnote omitted).

14. *Id.* at 235.

15. *Cf. Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 558–61, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (under Clean Air Act, attorney's fees appropriate for submission of comments on draft regulations to administrative agencies).

16. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 688 n. 9, 103 S.Ct. 3274, 3279 n. 9, 77 L.Ed.2d 938 (1983) (Clean Air Act).

der § 306 of the Act. The failure of the EPA even to consider recycling, then, was arbitrary and capricious. We therefore remand these limitations to the EPA for consideration of whether zero discharge limits would be appropriate for new plants in the OCPSF industry because of the existence of recycling.[17]

The NRDC's success on this contention likewise advances the goals of the CWA by requiring the EPA to consider technology that might have allowed it to promulgate lower NSPS. The NRDC therefore is entitled to attorney's fees for its labors.

■ We do not agree, however, with the NRDC's assertion that it is entitled to attorney's fees for "its successful argument that the Court should leave in effect any portions of the regulations remanded to the agency." While the NRDC contends that it sought to maintain in effect any portion of the regulations remanded to the agency while the EPA sought merely to uphold the regulations, in substance the contention of each party was that the regulations be enforced. The EPA did not disagree with the NRDC on this issue, and the NRDC prevailed only against the CMA.[18]

### III.

We now turn to determining the amount due the NRDC. While the issues involved are factual, we have decided not to refer them to a special master because they are intricately involved with our rulings on the merits and concern only work performed in connection with appellate proceedings.

This circuit set the guidelines for the award of attorney's fees under a fee-shifting statute, the Civil Rights Award Attorney's Fees Act of 1976, 42 U.S.C. § 1988, in *Johnson v. Georgia Highway Express.*[19] The unquantified, laundry-list approach of *Johnson* has, however, proved difficult to apply without further refinement because, as the District of Columbia Circuit observed, "[s]imply to articulate those twelve factors ... does not itself conjure up a reasonable dollar figure in the mind of a district court judge."[20] In *Hensley v. Eckerhart,*[21] also a case involving § 1988, the Supreme Court approved what is called the lodestar method of computing reasonable attorney's fees, an approach that we had earlier adopted in essence in *Copper Liquor, Inc. v. Adolph Coors Co.*[22] This begins with "the initial calculation of hours reasonably expended at a reasonable hourly rate."[23] The same principles for determining an award of fees are applicable under the CWA.[24]

The NRDC requests the following hourly rates for its attorneys: (1) Robert Adler, Director of the NRDC's Clean Water Program and a specialist in environmental law for nine years, $130; (2) Ronald Wilson, a litigator who has nineteen years of experience in handling environmental litigation, $150; and (3) Jessica Landman, an attorney for the Clean Water Project since 1986, $80. The NRDC has provided affidavits to support its contention that these hourly rates are reasonable. The EPA has submitted no factual data to suggest that these rates are not. It concedes that $80 per hour is a reasonable rate for Landman's services, but challenges the rate the NRDC proposes for the other two attorneys, arguing correctly that the NRDC bears the burden of proving its entitlement

---

17. *Chemical Mfrs.*, 870 F.2d at 264.

18. *See Avoyelles Sportsmen's League v. Marsh,* 786 F.2d 631, 632, 636 (5th Cir.1986).

19. 488 F.2d 714 (5th Cir.1974).

20. *Copeland v. Marshall,* 641 F.2d 880, 890 (D.C. Cir.1980) (en banc).

21. 461 U.S. 424, 434 n. 9, 103 S.Ct. 1933, 1940 n. 9, 76 L.Ed.2d 40 (1983).

22. 684 F.2d 1087, 1092 (*Copper Liquor III* ) (5th Cir.1982), *modified,* 701 F.2d 542 (5th Cir.1983) (en banc); *Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575, 583 (*Copper Liquor II* ) (5th Cir.1980).

23. *Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9; *see also Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. at 564, 106 S.Ct. at 3097.

24. *Hensley,* 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7 ("The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party' ").

to fees and the reasonableness of the amount claimed [25] and arguing that it has not done so.

■ In Adler's case, the EPA maintains that the "NRDC's own evidence supports a billing rate of [only] $110 per hour" because the affidavit of a lawyer submitted by NRDC states that junior partners with seven to ten years of experience—a category that includes Adler—"generally" bill $100 to $120 per hour. The same affidavit also states, however, that "the rates that these attorneys seek are fully consistent with ... reasonable prevailing rates," and, absent countervailing affidavits, we find the $130 per hour rate requested for Adler to be reasonable.

■ Wilson, as we have noted, has 19 years of experience as a litigator. He participated ably in the oral argument of this case. The EPA does not question that the market rate for a lawyer of his experience and ability is $150 per hour, but argues that compensation should not be allowed at that rate because Wilson bills the NRDC only $50 per hour for his services. Wilson notes that he does so at least in part because the NRDC provides him with an office and secretarial services, thus eliminating much of the office expense borne by practicing lawyers. In any event, the NRDC is entitled to the prevailing market rate for Wilson's services, even though he may see fit for whatever reason to give this client the benefit of a reduced rate.[26] We therefore fix Wilson's rate at $150 per hour.

## IV.

The NRDC's counsel have kept meticulous time records. To calculate the number of hours for which it claims reimbursement, the NRDC has divided the time its lawyers have expended into six categories:

Category A. All time spent on basic "core" activities essential for bringing this suit and that would have been necessary had the NRDC litigated only those issues on which it ultimately prevailed.

Category B. All time spent on issues with respect to which the NRDC was the prevailing or substantially prevailing party.

Category C. No fees for any time spent on issues with respect to which the NRDC was unsuccessful.

Category D. No fees for any time spent on matters related to the NRDC's role as a defendant-intervenor.

Category E. Twenty-nine percent of the hours spent on "core" aspects of this case that are not reasonably segregable and are not directly attributable to the successful or unsuccessful issues in the case.

Category F. All time spent on the NRDC's motion for attorney's fees.

The EPA concedes that if the NRDC is entitled to fees, the award should be based on all hours reasonably expended on the two issues on which it substantially prevailed. The EPA asserts, however, that "Category A and Category E should be treated alike," and that NRDC is entitled to compensation for only 15% rather than 29% of these hours. The EPA also argues that NRDC has claimed an unreasonable number of hours for work in Category F on its fee petition and that this figure should be reduced by 50%.

In *Hensley v. Eckerhart,*[27] the Supreme Court set the guidelines for determining hours reasonably spent in litigation involving issues on only some of which the party seeking fees prevailed. If the claims are based on different facts and legal theories, even though they are against the same defendant, work on an unsuccessful claim cannot be deemed expended in pursuit of

---

**25.** *See Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941; *Wheeler v. Mental Health & Mental Retardation Authority,* 752 F.2d 1063, 1073 (5th Cir.), *cert. denied,* 474 U.S. 824, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985).

**26.** *See, e.g., Missouri v. Jenkins,* —— U.S. ——, 109 S.Ct. 2463, 2471, 105 L.Ed.2d 229 (1989); *Blum v. Stenson,* 465 U.S. 886, 894–96, 104 S.Ct. 1541, 1546–47, 79 L.Ed.2d 891 (1984).

**27.** 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

the result achieved. More commonly, however, the plaintiff's

claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.[28]

As the Seventh Circuit held in *Ustrak v. Fairman*, a "partially prevailing plaintiff should be compensated for the legal expenses he would have borne if his suit had been confined to the ground on which he prevailed plus related grounds within the meaning of *Hensley*."[29]

*Hensley* appears to call for a two-step approach in such cases: first the court identifies unsuccessful claims that are wholly unrelated to successful claims and excludes the claimed hours associated with the unsuccessful claims; then the court determines whether a further reduction in the fee award should be made because the prevailing party's success on the remaining interrelated claims was limited.[30] The method of computation employed by both the NRDC and the EPA differs from the *Hensley* dictate for it proceeds on the brick-by-brick basis of determining even in multiple-issue cases what hours were reasonably necessary instead of looking to time reasonably spent on the entire case

and eliminating time for which compensation should not be allowed.

The NRDC does not seek fees for time spent on issues on which the NRDC was unsuccessful (Category C) or for time spent on matters related to its role as defendant-intervenor (Category D). Both concessions appear reasonable: time spent on unrelated, unsuccessful claims is properly excluded under *Hensley*'s first step,[31] and the EPA should not be forced to compensate for time spent by the intervening NRDC in defending the government against industry challenges.[32] For similar reasons, time spent on the equitable relief issue (requesting that "the court should leave in effect any portions of the regulations remanded to the agency") should be deducted, since although it may have been both successful and related to other successful claims, the NRDC was not opposed by the EPA in this regard.

■ Having deducted the time the NRDC's attorneys dedicated to these matters, we also deduct the portion of the nonsegregable time associated with them, or, viewed alternatively, some portion of the nonsegregable time to account for the NRDC's "partial or limited success."[33] The NRDC has identified a category of "core" activities that were essential for bringing suit and that would have been necessary had it litigated only those issues on which it ultimately prevailed (Category A). All of the NRDC claims arose under the same statute, and each attacked some part of the same regulation. Time spent in reviewing the record to narrow and identify issues, to prepare and file the petition

---

**28.** 461 U.S. at 435, 103 S.Ct. at 1940. *See also Nash v. Chandler*, 848 F.2d 567, 572–573 (1988); *Conservation Law Found. v. Secretary of Interior*, 790 F.2d 965, 968–70 (1st Cir.1986); *Planned Parenthood v. Arizona*, 789 F.2d 1348, 1352–53 (9th Cir.), *aff'd*, 479 U.S. 925, 107 S.Ct. 391, 93 L.Ed.2d 346 (1986); *Aubin v. Fudala*, 782 F.2d 287, 291 (1st Cir.1986); *Ohio–Sealy Mattress Manuf. Co. v. Sealy Inc.*, 776 F.2d 646, 653 (7th Cir.1985); *Goodson v. City of Atlanta*, 763 F.2d 1381, 1390 (11th Cir.1985); *Redding v. Fairman*, 717 F.2d 1105, 1119 (7th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984); *Copeland v. Marshall*, 641 F.2d 880, 892 n. 18 (D.C.Cir.1980) (en banc); *Lamphere v. Brown Univ.*, 610 F.2d 46, 47 (1st Cir.1979).

**29.** 851 F.2d 983, 988 (7th Cir.1988).

**30.** M. Schwartz and J. Kirklin, Section 1983 Litigation: Claims, Defenses, and Fees 496 (1986); *see also Hensley*, 461 U.S. at 434–36, 103 S.Ct. at 1939–41.

**31.** *Hensley*, 461 U.S. at 434–36, 103 S.Ct. at 1939–41; *Sierra Club v. EPA*, 769 F.2d 796, 803 (D.C. Cir.1985).

**32.** *Avoyelles Sportsmen's League*, 786 F.2d at 632, 636.

**33.** *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941.

for review, and to address the novel venue selection procedures[34] that were followed for the first time in this case was all indispensable to the prosecution of successful claims, and none should be deducted in the calculation of the fee award.

Other work was devoted indistinguishably to both kinds of claims, but was not *in toto* required for the pursuit of the successful claims. The parties differ not only on the identity of the successful and unsuccessful claims, but also on the number of different claims actually presented, arguing that the ratio of successful to total claims presented is significant in determining that part of the nonsegregable time properly allocated to the losing claims. The EPA contends that the NRDC presented thirteen issues and was unsuccessful in eleven. The NRDC, on the other hand, attempts to measure its success (or, conversely, lack of success) by averaging three computations: a "per page approach," which calculates the proportion of brief pages devoted to successful issues, yielding 28%; an inclusionary "issues approach," which calculates the proportion of successful issues, including the equitable issue of retaining the remanded regulations in force, yielding 35%; and finally an exclusionary "issues approach," which excludes the equitable issue, yielding 25%. Our ruling that time spent on the equitable issue is not compensable eliminates the inclusionary "issues approach" from consideration, however, and reduces the figure obtained by the "per page" approach from 28% to 25%, representing 25 out of 101 pages. Thus both of the NRDC's remaining methods of calculation yield results of 25%.

While we are cognizant of the Supreme Court's disapproval of " 'a mathematical approach comparing the total number of issues in the case with those actually pre-

vailed upon,' "[35] the use of the two measures employed here coincides with a necessarily less exact sense of the proportion of success enjoyed by the NRDC.[36] The disallowance of three-fourths of the hours spent on inseparable work appears to us to be a fair measure of the time allocable to issues on which the NRDC did not prevail, and, accordingly, we disallow 75% of the time listed in Category E.

## V.

■ The NRDC seeks also to be compensated for 63.92 hours spent in work on its fees petition. In *Sierra Club v. EPA*,[37] the District of Columbia Circuit granted the full amount requested for such work, noting that although the time spent appeared excessive, the government did not contest the hours requested. In this case, however, the EPA contends that the time spent was inordinate. The NRDC was required to sustain its burden of proof by the careful inspection of each time entry, an activity necessarily consuming substantial attorney time, and had to prepare a brief, reply brief, and supplemental letter to this court. We agree that the amount of time thereby spent in the fee application was extreme, but we nonetheless approve it under the particular circumstances of this intricate case.

## VI.

■ The NRDC is entitled to recover the reasonable travel expenses incurred by its counsel in appearing for oral argument, not as "costs" but as part of its attorney's fees. Such expenses are customarily billed to clients and should be viewed as part of the "reasonable attorney's fees" allowed under 33 U.S.C. § 1369(b)(3).[38]

---

34. *See* 28 U.S.C. § 2112 (1982 & Supp. V 1987).

35. *Hensley,* 461 U.S. at 435 n. 11, 103 S.Ct. at 1940 n. 11.

36. *See, e.g., Sierra Club,* 769 F.2d at 808 (estimating percentage reduction in time not allocated to specific issues in award of attorney's fees under Clean Air Act).

37. 769 F.2d 796, 811–12 (D.C.Cir.1985).

38. *See, e.g., Laffey v. Northwest Airlines,* 746 F.2d 4, 30 (D.C.Cir.1984) (section 1988), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985); *Northcross v. Board of Educ. of the Memphis City Schools,* 611 F.2d 624, 639 (6th Cir.1979) (section 1988), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).

## VII.

The EPA is therefore ordered to compensate the NRDC for $43,554.78 in fees and expenses, calculated as follows:

```
Adler: $130 * 176.85 hours = $22,990.50
  Category A:  100% * 121.00   121.00
  Category B:  100% *  23.25    23.25
  Category E:   25% * 120.40    30.10
  Category F:  100% *   2.50     2.50
                              _____
                              176.85  Hours
Wilson: $150 * 63.44 hours = $9,516.00
  Category A:  100% *  36.75    36.75
  Category B:  100% *   8.00     8.00
  Category E:   25% *  20.75     5.19
  Category F:  100% *  13.5     13.50
                              _____
                               63.44  Hours
Landman: $80 * 129.33 hours = $10,346.40
  Category A:  100% *  59.27    59.27
  Category B:  100% *   5.20     5.20
  Category E:   25% *  67.76    16.94
  Category F:  100% *  47.92    47.92
                              _____
                              129.33  Hours

Adler total:     $22,990.50
Wilson total:      9,516.00
Landman total:    10,346.40
Expenses:       $    701.88
                _____
TOTAL           $43,554.78
```