IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 7, 2008

Charles R. Fulbruge III
Clerk

No. 06-10974

BLUE SKIES ALLIANCE, DOWNWINDERS AT RISK,
PUBLIC CITIZEN, and SIERRA CLUB,

                                            Plaintiffs-Appellees,

v.

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY,

                                            Intervenor-Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas
No. 3:04-CV-2169

Before REAVLEY, SMITH, and GARZA, Circuit Judges.

PER CURIAM:[*]

      Blue Skies Alliance and other environmental organizations sued the En-
vironmental Protection Agency ("EPA") under the Clean Air Act ("CAA") for fail-

------

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

ing to take several non-discretionary actions with respect to the air quality in the Dallas-Fort Worth area ("DFW"). The Texas Commission on Environmental Quality ("TCEQ") and other parties intervened. After multi-lateral discussions, plaintiffs and the EPA agreed to a consent decree that included attorneys' fees for plaintiffs; there were also agreements with several of the intervenors, including the TCEQ.

Plaintiffs moved for attorneys' fees of $56,276.10 from the TCEQ, which the district court awarded. The TCEQ appeals the awarding of fees. Because plaintiffs did not have success against the TCEQ on the merits, attorneys' fees are not justified, so we reverse the fee award.

I.

This case arises from DFW's failure to satisfy the minimum national ambient air quality standards ("NAAQS") set by the EPA. Under the CAA, the EPA sets the NAAQS, and the state is required to develop a state implementation plan ("SIP") that models existing and future air quality conditions and specifies techniques and strategies for attaining the NAAQS by the statutory deadline. The SIP is developed by the state with the input of many groups, including local governments, industry, and citizen groups. The EPA must approve the SIP.

Based on the level of ozone pollution, an area is classified as marginal, moderate, serious, severe, or extreme. Each classification level has specific and increasingly more onerous requirements and has different deadlines for mandatory attainment. If the state fails to attain the NAAQS by the deadline or has excessive pollution and requests voluntary reclassification, the area is placed into the next higher class.

The EPA changed the NAAQS for ozone in 1997. Before 1997, the NAAQS for ozone was 120 parts per billion averaged over a one-hour period (the "one-hour standard"). The 1997 revision adopted a NAAQS for ozone of 80 parts per

billion averaged over an eight-hour period (the "eight-hour standard").

DFW has consistently failed to meet the NAAQS. Likewise, the TCEQ has repeatedly failed to submit an adequate SIP. Consequently, in 1998 the EPA re-classified DFW from "moderate" to "serious" with a new attainment deadline of November 15, 1999.

Under 42 U.S.C. § 7509(c), the EPA administrator was required to deter-mine, within six months of the deadline, whether DFW had met the one-hour NAAQS. If he found that it had not, DFW was to be automatically reclassified as "severe." 42 U.S.C. § 7511(b)(2). In October 2004, when this suit was filed, the EPA had yet to determine whether DFW had achieved the one-hour stan-dard as of November 15, 1999. Thus, plaintiffs sued under the CAA's citizen suit provision, 42 U.S.C. § 7604(a)(2), to compel the EPA to render its determination.

Additionally, the EPA is required to approve, approve in part, or disap-prove a SIP within twelve months of its submission and the EPA's determination that it is complete. 42 U.S.C § 7410(k)(2). The TCEQ submitted two SIP revi-sions in response to the 1998 reclassification, on October 25, 1999, and April 25, 2000. On December 16, 1999, and June 23, 2000, respectively, the EPA deter-mined the revisions were complete At the time this suit was filed, the EPA had not taken final action on either SIP, and the suit sought to compel such action.

The counties of Collin, Ellis, and Tarrant and the City of Garland inter-vened as defendants; the Association of Cement Companies of Texas, the Port-land Cement Association, and the BCCA Appeal Group intervened as defendants to represent various business interests. The TCEQ intervened as a defendant at the request of Tarrant and Collin counties and the EPA. The plaintiffs did not oppose any of the interventions but asked that each intervenor be willing to par-ticipate constructively in settlement negotiations.

Those negotiations resulted in a consent decree agreed to by plaintiffs and the EPA whereunder the EPA agreed to act on the April 2000 SIP revision and

two other SIP's not mentioned in the original complaint. Plaintiffs agreed to have their suit dismissed with prejudice, foregoing their claim to compel a determination of whether DFW had met the one-hour standard by November 15, 1999, and their claim to compel action on the October 1999 SIP revision. Plaintiffs and EPA agreed that plaintiffs were entitled to attorneys' fees under 43 U.S.C. § 7604(d), the amount to be determined by a later settlement or court order. The negotiations also resulted in agreements among plaintiffs and some of the intervenors.

Plaintiffs entered into agreements with the local government intervenors on emissions reduction strategies. Plaintiffs and the TCEQ entered into an agreement regarding actions to meet the new eight-hour standard by the June 2007 deadline. The agreement included six actions the TCEQ would undertake:

(1) The TCEQ would consider implementing emissions controls before the the statutory deadline.

(2) The TCEQ would work with the EPA to determine the adequacy of the DFW 1999 episode and to receive the EPA's concurrence on the performance of the photochemical model for planning the eight-hour SIP, with the ultimate goal of submitting the eight-hour SIP in advance of the statutory deadline and achieving attainment of the eight-hour standard as soon as practicable. The TCEQ also agreed to keep plaintiffs informed of the progress of each effort.

(3) The TCEQ agreed to consider control measures used in other one-hour nonattainment areas, including Los Angeles, which has the most exhaustive control measures in the country. The TCEQ agreed to explain any decision not to include one of these measures in the eight-hour SIP.

(4) The TCEQ agreed to a time line, with input from plaintiffs, the EPA, and the Portland Cement Association, for a study of available air pollution control technologies for the cement kilns in DFW. The TCEQ was already developing a scope of work contract for such a study, but the agreement specified dates

and mandated the inclusion of plaintiffs in the process.

(5) The TCEQ agreed to consider rulemaking or other action necessary to implement the controls considered under item (3) above and the technologies identified under item (4) for the cement kilns.

(6) The TCEQ agreed to confer in good faith with plaintiffs' counsel on any issues that might arise from the agreement.

The TCEQ's actions were in exchange for plaintiffs' commitment to communicate with the TCEQ and to sign the consent decree with the EPA. The agreement was contingent on the district court's signing the decree, the EPA's fulfilling its obligations under the decree, and the dismissal of the suit with prejudice. After the court had signed the decree and plaintiffs had reached an agreement on attorneys' fees with the EPA, plaintiffs filed their successful motion for fees from the TCEQ.

## II.

The CAA's citizen suit provision provides that the district court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." Clean Air Act § 304(d) (codified at 42 U.S.C. § 7604(d)). The Supreme Court has analogized § 304(d) to 42 U.S.C. § 1988, see Pennsylvania v. Del. Valley Citizen's Council for Clean Air, 478 U.S. 546, 560 (1986), and we review an award of attorneys' fees under § 1988 for abuse of discretion, with the supporting facts reviewed for clear error and the underlying conclusions of law reviewed de novo. Riley v. City of Jackson, Miss., 99 F.3d 757, 759 (5th Cir. 1996). Thus, we review attorneys' fees under § 304(d) for an abuse of discretion; we review supporting facts for clear error and questions of law de novo.

The "American Rule" is the starting point for fee awards: Even prevailing litigants are ordinarily not entitled to attorneys' fees from the losing party.

Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Servs., 532 U.S. 598, 602 (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975)). Congress has abrogated that rule by statute for certain situations. Though § 304(d) does not limit the award to "prevailing," "substantially prevailing," or "successful" parties as many other statutes do, see Ruckelshaus v. Sierra Club, 463 U.S. 680, 684 & nn.3-5 (1983), "intuitive notions of fairness" suggest that "a successful party need not pay its unsuccessful adversary's fees." Id. at 685. Thus, a clear showing from Congress is required to conclude that it intended to depart from "intuitive notions of fairness." Id.

Here, there is no such showing, so the question is how much success is necessary to justify an award of fees. The Sierra Club Court, in construing § 307(f) of the CAA, concluded that "some degree of success on the merits by the claimant," id. at 694, was necessary to justify an award. The Court looked in part to § 304(d), because these two fee shifting provisions share identical "whenever . . . appropriate" language. Id. at 692. "[W]hatever general standard may apply under § 307(f), a similar standard applies under § 304(d)." Id. "[A]t least as a general principle, th[e] award[] of attorneys' fees under § 304(d) will be 'appropriate' in circumstances similar to those that are 'appropriate' under § 307(f)." Id. Accordingly, we must answer whether plaintiffs achieved "some degree of success on the merits," id. at 694, such that § 304(d) authorizes the award.[1]

---

[1] Plaintiffs contend they have satisfied the Sierra Club standard for success, but they also claim the fee award is proper under Chemical Manufacturers Association v. United States Environmental Protection Agency, 885 F.2d 1276, 1279 (5th Cir. 1989), where we held the National Resource Defense Council was entitled to attorneys' fees for advancing the goal of the Clean Water Act. Finally, plaintiffs assert the award is justified under the "catalyst" theory, see Hennigan v. Ouachita Parish Sch. Bd., 749 F.2d 1148, 1152-53 (5th Cir. 1985). In light of the Court's express comparison between § 307(f) and § 304(d) in Sierra Club and its statement that §304(d) is governed by a standard similar to § 307(f), we apply the "some success" standard and do not need to consider whether plaintiffs advanced the goal of the CAA or whether their suit was a catalyst. We also do not address whether the catalyst theory even remains valid in the wake of Buckhannon, 532 U.S. at 605-10. See Planned Parenthood v. Sanchez, 480
(continued...)

The "merits" of a case are the "elements or grounds of a claim or defense; the substantive consideration to be taken into account in deciding a case." BLACK'S LAW DICTIONARY (8th ed. 2004) ("merits").  Plaintiffs' claim is against the EPA Administrator for failing to take non-discretionary action.  As their first cause of action, they allege that the EPA "Administrator is in violation of her non-discretionary duties as set forth in 42 U.S.C. § 7509(c)(1) and § 7511(b)(2)." As their second, they allege the "Administrator is in violation of his non-discretionary duties as set forth in 42 U.S.C. § 7410(k)(3)" and (2).  Accordingly, plaintiffs' requested relief is a declaration that the Administrator was in violation of his non-discretionary duties and injunctions requiring him to fulfill those duties within thirty days.

The grounds for these claims, and hence the merits of the suit, are the Administrator's inaction.  Any success achieved on these merits does not relate to the TCEQ.  In fact, plaintiffs cannot achieve any success against the TCEQ on those grounds, because the statutes mandate action only by the Administrator. Because plaintiffs articulated no cause of action against the TCEQ, they could not achieve any success on the merits, as required by Sierra Club, to justify an award of attorneys' fees.[2]

For the foregoing reasons, the award of attorneys' fees is REVERSED.

---

[1] (...continued)
F.3d 734, 740 (5th Cir. 2007).

[2] Plaintiffs assert the Sierra Club standard justifies their award because the Court recognized that § 307(f), and hence § 304(d), were "meant to expand the class of parties eligible for fee awards from prevailing parties to partially prevailing partiesSSparties achieving some success, even if not major success." Sierra Club, 463 U.S. at 688.  The Court explained, however, that this holding "does not mean that even if a party is unsuccessful in all respects, it still may recover fees from its opponents." Id. at 690-91.  Plaintiffs, like the respondents in Sierra Club,  are parties that have achieved no success on the merits against the defendant from which they seek fees, so they are not entitled to the award.