Moses LEROY, et al.,
Plaintiffs–Appellees,

v.

The CITY OF HOUSTON, et al.,
Defendants–Appellants.

GREATER HOUSTON CIVIC COUNCIL, et al., Plaintiffs–Appellees,

v.

Frank MANN, et al., Defendants,

City of Houston, et al.,
Defendants–Appellants.

Nos. 88–2506, 88–2813 and 89–2180.

United States Court of Appeals,
Fifth Circuit.

July 30, 1990.

As Corrected Sept. 14, 1990.

Robert J. Collins, John E. Fisher, Sr. Asst. City Attys., Clarence A. West, City Atty., and John Whittington, Asst. City Atty., City of Houston Legal Dept., Houston, Tex., for defendants-appellants.

J. Patrick Wiseman, Austin, Tex., L.A. Greene, Jr., David Boddie, Houston, Tex., Jesse Bottello, and George Korbel, San Antonio, Tex., for Moses Leroy, et al.

Before JOHNSON, WILLIAMS, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

These consolidated appeals by defendant The City of Houston (the City) from attorneys' fees awards are sequels to our prior decision in this same litigation in *Leroy v. City of Houston*, 831 F.2d 576 (5th Cir. 1987) (*Leroy IV*), cert. denied, 486 U.S. 1008, 108 S.Ct. 1735, 100 L.Ed.2d 199 (1988).

**Context Facts and Proceedings**

The earlier history of this litigation is detailed in *Leroy IV*, and we outline it here only to place the present appeal in context.

In December 1973, plaintiffs-appellees, black and Hispanic voters in Houston, Texas, commenced an action in the United States District Court for the Southern District of Texas, alleging that the at-large system of electing the Houston City Council unconstitutionally diluted their votes. *Greater Houston Civic Council v. Mann*, 440 F.Supp. 696 (S.D.Tex.1977) (*Mann*). In 1975, before *Mann* came to trial, the same and related plaintiffs, represented by the same counsel, commenced another action in the same court, seeking to enjoin a City election on the ground that it included voters living in predominantly white areas which had been made part of the City by annexations that had not been precleared

by the Department of Justice under section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. *Leroy v. City of Houston*, No. H-75-1731 (S.D.Tex.) (*Leroy I*). In 1975, *Mann* was tried on the merits for some five and a half weeks and in March 1977, the district court entered judgment for the defendants, finding that the at-large system did not unconstitutionally dilute minority votes. Plaintiffs appealed *Mann* to this Court. In 1978, the district court dismissed *Leroy I* with prejudice, and denied plaintiffs' request for attorneys' fees, because their challenged annexations had been submitted to the Attorney General under section 5 before the complaint had been served on the City and had been precleared. No appeal was taken from the dismissal of *Leroy I*.

The *Leroy I* court's having denied plaintiffs' request to amend to also challenge certain 1977 annexations for lack of section 5 preclearance, the plaintiffs through the same attorneys in November 1978 filed a separate complaint in the same court, seeking to enjoin those annexations and a special bond election set for January 1979 in the thus expanded City. *Leroy v. City of Houston*, No. H-78-2174 (S.D.Tex.) (*Leroy II*). Shortly thereafter, the United States filed in the same court another suit against the City, seeking the same relief, and in December 1978 these two suits were consolidated. The City then submitted its 1977 and 1978 annexations to the Justice Department for section 5 review. The attorneys for the plaintiffs urged the Justice Department to object to the annexations under section 5, and the Justice Department did object to fourteen of them, but precleared a referendum election to adopt a mixed single-member and at-large plan for the City's council elections. This mixed plan having been approved at that election, the Attorney General in September 1979 precleared the annexations (and the mixed plan) under section 5. The parties to the *Mann* appeal, which by that time had been fully briefed and argued but had not been decided, then informed this Court that it had become moot, and thereafter, in December 1979, we accordingly remanded *Mann* to the district

court for consideration of plaintiffs' request for attorneys' fees.

The attorneys' fees matter lay essentially dormant in the district court for some years. Then, after certain preliminary matters were disposed of in 1984,[1] the district court held a hearing on the attorneys' fees claim over some ten days in April and May 1985. On August 1, 1986, the district court entered an opinion and judgment awarding the plaintiffs' attorneys the total sum of $1,025,232.40 in fees ($984,801.50) and expenses ($40,430.92) against the City.[2] *Leroy v. City of Houston,* 648 F.Supp. 537, 577–78 (S.D.Tex.1986) (*Leroy III*). The City promptly appealed to this Court.

In an opinion issued November 12, 1987, we held that plaintiffs' counsel were not entitled to any attorneys' fees for any of their work on *Leroy I* or before the Justice Department in reference to preclearance [3]; that they were entitled under 42 U.S.C. § 1973*l* (e) to recover fees for services in *Mann* and *Leroy II;* that the district court erred in applying a contingency enhancement multiplier to the lodestar fee; that the district court improperly awarded expert witness fees; and that the district court committed various errors in its analysis and consideration of the lodestar fee. *Leroy IV,* 831 F.2d at 580–86. We concluded by stating:

> "After careful review of the record, this court holds that to award $1 million in attorneys' fees and expenses was excessive and an abuse of discretion.... We have laboriously reviewed the record in light of the district court's opinion, the parties' contentions, and the considerations outlined in this opinion. We believe a fair, indeed ample award of $693,805 [16] remunerates the ultimately successful efforts of plaintiffs' counsel and fulfills the goal of the Voting Rights Act. The ex-

cess amount awarded by the district court was founded on erroneous legal analysis and in part upon an abuse of its discretion. We therefore vacate the judgment of the district court, and remand for entry of a judgment in the amount of $693,805.00."

> "[16.] We reach this result as follows. The district court awarded appellees approximately $843,337.50 for 4,659.95 hours' work, before adding any contingency multiplier. This represents an average hourly rate of $181. We deduct 254 hours from the base number of hours, reflecting the work on *Leroy I* and the Justice Department proceedings that we have held noncompensable. We further deduct 13% from the average hourly rate for incomplete time records. The resulting award is $693,805.00." *Id.* at 586.

The plaintiffs did not seek rehearing or certiorari in respect to our *Leroy IV* decision. We denied the City's suggestion for rehearing en banc (which we also treated as a petition for rehearing) on December 28, 1987, and our *Leroy IV* mandate issued on January 8, 1988. Neither our opinion nor mandate contains any instructions as to interest. The mandate provides that costs on appeal be taxed equally against the parties. The City filed a petition for writ of certiorari on March 28, 1988, which the United States Supreme Court denied on May 16, 1988. 486 U.S. 1008, 108 S.Ct. 1735, 100 L.Ed.2d 199 (1988).

Meanwhile, after our mandate issued in *Leroy IV,* the plaintiffs, on February 5, 1988, filed a "prayer for judgment" in the district court, seeking judgment in the amount of $710,235.92, with interest from August 1, 1986. The $710,235.92 was composed of the $693,805 which we had directed that judgment be entered for plus $16,430.92 of expenses included in the August 1, 1986 district court judgment (*Leroy III*) which plaintiffs contended we had not disturbed on appeal. A nonevidentiary hear-

---

1. *See Leroy v. City of Houston,* 584 F.Supp. 653 (S.D.Tex.1984); *Leroy v. City of Houston,* 592 F.Supp. 415 (S.D.Tex.1984); *In re City of Houston,* 745 F.2d 925 (5th Cir.1984).

2. We disregard the two cent obviously clerical error in the addition of the expense and fee totals.

3. Recovery as to *Leroy I* was barred by the unappealed district court judgment denying at-

torneys' fees; as to work before the Justice Department, this was not related to furthering the prosecution of the *Mann* or *Leroy II* litigation itself. *Leroy IV,* 831 F.2d at 582–83. We noted that plaintiffs claimed 2,450 hours in *Mann,* 140 hours in *Leroy I,* 496 hours in *Leroy II,* and 114 hours before the Justice Department. *Leroy IV* at 581 n. 8.

ing was held on the plaintiffs' prayer for judgment on April 15, 1988, and the City, which was permitted to file an out-of-time response, contended that interest should run only from the date of the district court's judgment pursuant to our mandate, and that our *Leroy IV* decision and mandate likewise precluded the award of the $16,430.92 expenses. After the conclusion of the hearing, the district court on April 15, 1988, rendered judgment (docketed April 18) for plaintiffs for $693,805 with interest thereon from August 1, 1986, reserving the matters of the $16,430.92 expenses and attorneys' fees for presenting the prayer for judgment. On May 16, the City filed its notice of appeal from this judgment (our cause No. 88–2506).

On May 26, 1988, plaintiffs issued a notice to take the Mayor of the City's oral deposition on June 3,[4] and the City moved to quash and for a protective order on May 27. The plaintiffs, on May 27, also caused a writ of execution to be issued on the April 15, 1988 judgment,[5] and the City, on May 31, moved to stay the judgment pending appeal. A hearing on both these motions was held on June 2, and the district court at that time denied the motion to stay and the motion to quash deposition, and the deposition was taken by videotape on June 3. However, on June 6, the district court entered an order, signed and approved by counsel for all parties, which "granted in part and denied in part" the City's motion for stay by staying pending appeal so much, and only so much, of the April 15, 1988 judgment as awarded interest from August 1, 1986 to April 15, 1988, and providing with respect to the balance of the April 15, 1988 judgment that "the City of Houston is hereby ordered to pay that amount within ten days of this order."[6] Two days later, the City paid that amount, $693,805, plus $9,061 as interest thereon from April 15, 1988 and (apparently) costs.

On July 22, 1988, the district court held a hearing on plaintiffs' entitlement to attorneys' fees for services after August 1, 1986 when its *Leroy III* judgment was rendered. On August 13, 1988, the court entered a judgment decreeing that plaintiffs were awarded the following: (a) $311,625 as attorneys' fees, and $16,488.57 as expenses, for services from August 1, 1986 through July 22, 1988; plus (b) "$16,430.92 in expenses previously ordered by the Court" (in its August 1, 1986 judgment). The City filed a notice of appeal from this order on August 23, 1988 (our cause No. 88–2813).[7]

---

**4.** The notice called for the deposition to be taken at plaintiffs' counsel's office and to be videotaped, and was accompanied by a personal and *duces tecum* subpoena requiring production, *inter alia*, of "any and all" records maintained by the Mayor's office "relating to any aspect of this suit" as well as "records identifying the banks used by the City . . . for deposit of general revenue funds."

**5.** Service was made on May 31 on "Robert J. Collins, assistant City Attorney," as designated in the request for the writ, and the June 1 return reflects that the demand for payment of the judgment, with interest and costs, was refused by Collins.

**6.** The June 6 order also provided that such payment "shall not be used by either party to support any argument that interest, fees on appeal, or expenses of any sort or [*sic*], are or are not, properly awardable" and recites that the amount so ordered paid "represents a sum of money which now is no longer in dispute."

**7.** On December 1, 1988, a new district judge, who had succeeded to the case, entered an order simply dismissing *Leroy II.* Plaintiffs filed a motion to amend that order on December 6, 1988, requesting that it be changed from a straight dismissal to "an award of attorneys' fees, costs and expenses in the amount of $328,-113.57, of which $237,570.42 is an interim award." On January 6, 1989, the district court entered an order amending the December 1, 1988 judgment so that it merely awarded plaintiffs "attorneys' fees and expenses of $328,113.57 against the defendants" with interest thereon at 7.95 percent per annum from August 13, 1988. The City filed notice of appeal from this judgment on January 25, 1989 (our cause No. 89–2180).

The City's appeals from the April 15, 1988, August 13, 1988, and January 6, 1989 orders have been consolidated in this Court. For purposes of this appeal, no party has attached any particular significance to the order of January 6, 1989 (among other things, no party urges that it eliminates the $16,430.92 of expenses included in the August 1, 1986 judgment and also included in the August 13, 1988 order), and all the contentions on appeal are focused on certain provisions of the April 15, 1988 and August 13, 1988 awards. Our focus will be similar.

## Discussion

### 1. Interest from August 1, 1986 to April 15, 1988

■ The City's initial contention is that the district court erred in its April 15, 1988 judgment by awarding interest from August 1, 1986 to April 15, 1988, because our *Leroy IV* mandate vacated and reversed the district court's August 1, 1986 judgment and directed "entry of a judgment in the amount of $693,805.00" and did not authorize any interest prior to the date of the judgment to be rendered on remand. We agree with the City.

Our judgment in *Leroy IV*, expressly vacating and reversing the district court's August 1, 1986 judgment "with a direction that a judgment for money be entered in the district court," is clearly governed by the second sentence of Fed.R.App.P. 37, and our mandate makes no provision as to interest. As we explained a decade ago, "[t]he Supreme Court in *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948), ruled that, where a court of appeals had remanded a case with directions to enter judgment for plaintiff, the district court *could not* exact interest from the date of the first judgment unless so ordered by the mandate of the court of appeals. This result was later codified in F.R.A.P. 37...." *Gele v. Wilson*, 616 F.2d 146, 149 (5th Cir.1980) (emphasis added). And last year, in reversing a judgment following remand because it awarded interest from the first (reversed) judgment rather than from the post-remand judgment, when our mandate on the original appeal was silent as to interest, we reiterated those principles:

"Ingersoll–Rand [appellant] complains that the post-judgment interest award was improper, since the prior mandate from this court did not direct that post-

judgment interest run from the date of the first judgment. This point is well taken. If an appellate court reverses or modifies a judgment with a direction that a judgment be entered against a party, the mandate from the appellate court must specifically order that interest run from the date of the first judgment, else interest runs from the date of the second, modified judgment. F.R.A.P. 37; *Gele v. Wilson*, 616 F.2d 146 (5th Cir. 1980); *Briggs v. Pennsylvania Railroad Co.*, 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948). Even if this is the result of inadvertence on the part of the appellate court, the appropriate procedure is to file a motion to reform the mandate under Federal Rule of Appellate Procedure 37. Since no such motion was filed, we reverse the district court...." *Vickers v. Chiles Drilling Co.*, 882 F.2d 158, 159 (5th Cir.1989).

That the appropriate procedure in such an instance is to move this Court to recall its mandate, we indicated as long ago as 1952, *Givens v. Missouri–Kansas–Texas R. Co. of Texas*, 196 F.2d 905 (5th Cir.1952), and as recently as April 1990 in *Canal Ins. Co. v. First General Ins. Co.*, 901 F.2d 45 (5th Cir.1990), where we also again pointed out that, absent modification of a mandate reversing and directing entry of a money judgment without instructions as to interest, "the district court on remand is *without power* to award prejudgment interest." *Id.* at 47 (emphasis added). Many other decisions of this Court are in accord. *See, e.g., National Surety Corp. v. Charles Carter & Co., Inc.*, 621 F.2d 739 (5th Cir. 1980); *Reeves v. International Tel. & Tel. Corp.*, 705 F.2d 750 (5th Cir.1983); *Reaves v. Ole Man River Towing Inc.*, 761 F.2d 1111 (5th Cir.1985); *In re Incident Aboard the D/B Ocean King*, 877 F.2d 322 (5th Cir.1989).[8] This is further made plain by

---

**8.** Plaintiffs' reliance on *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542 (5th Cir.1983) (en banc), is misplaced. *Copper Liquor* deals with the substantive question of in what instances and from what time interest on an award of attorneys' fees, including one following a remand, should run; it does not address the question of the binding effect on the district court of an appellate court's mandate, where there has

been a reversal (or modification) with direction for the entry of a money judgment in the district court but without instructions as to interest, under Fed.R.App.P. 37 and *Briggs*. Moreover, so far as *Copper Liquor* indicates that *substantively* interest on judgment following remand should always run from the date of the first judgment, it has been superseded by our subsequent en banc opinion in *Affiliated Capital*

the Notes of the Advisory Committee on Appellate Rules with reference to Fed.R. App.P. 37.[9]

On several occasions we have treated an appellate request for interest from the first judgment as allowing us to *sua sponte* recall our earlier mandate where we deemed that required in the interests of justice. *See Reeves; Reaves.* However, we have never indicated that such relief is automatic, and in other cases we have refused it. *See Gele; National Surety Corp.; Vickers. Cf. Nelson v. James,* 722 F.2d 207 (5th Cir.1984) (mandate not to be recalled except "for good cause shown").

■ We decline to now recall our *Leroy IV* mandate. Here the City made it entirely plain to plaintiffs (and to the district court) before and at the April 15, 1988 hearing that this Court's *Leroy IV* mandate precluded the district court from awarding interest prior to its judgment entered following our remand, citing and explaining, *inter alia,* the second sentence of Rule 37, the Notes of the Advisory Committee in respect thereto, and the *Briggs* rule. Indeed, the City continued to thereafter urge this position and these authorities. Nevertheless, the plaintiffs, experienced attorneys representing themselves, adamantly refused to file a motion to recall the mandate, as the Notes of the Advisory Committee, to which their attention had been called, clearly suggested that they could do, as did also prior decisions of our Court. They instead insisted that the district court grant them relief, which it had no authority to grant absent our modification of the mandate. No reason or excuse for this failure has ever been proffered.[10] The consequence of taking this position was a vast waste of time and much unseemly wrangling about collection of a judgment which would have been paid had it not included that which our mandate did not authorize and hence precluded. Moreover, this is not an instance where the mistakes of the lawyer are visited on the innocent clients, for here the merits clients, the plaintiffs in underlying civil rights cases, are not seeking to recoup fees paid or liabilities incurred to the attorneys, but rather the real parties at interest are the attorneys who, long after the "merits" were wholly concluded, represented only themselves in the attorneys' fees trial (*Leroy III*), in the prior (*Leroy IV*) appeal and thereafter in the district court. Moreover, the $693,805 principal sum awarded those attorneys constitutes an "indeed ample award," *Leroy IV* at 586, for their legal services. Considering all these factors together, we decline to now recall our *Leroy IV* mandate to authorize interest on the

*Corp. v. City of Houston,* 793 F.2d 706 (5th Cir.1986), which holds that the decision as to whether interest on the judgment following remand runs from the date of that judgment or from the date of the first judgment is to be decided on the equities of each case. Further, *Affiliated Capital* expressly reaffirms the rule of *Briggs* and *Gele. Affiliated Capital,* 793 F.2d at 708 n. 2.

Nor is *Nissho–Iwai Co. v. Occidental Crude Sales, Inc.,* 848 F.2d 613 (5th Cir.1988), to the contrary, as there we concluded that the second sentence of Rule 37 did not apply because our prior remand "did not direct the district court to enter judgment for money and a judgment for Nissho was not an inevitable consequence of the remand." *Id.* at 624.

9. The Notes state in this respect:

"In reversing or modifying the judgment of the district court, the court of appeals may direct the entry of a money judgment.... In such a case the question may arise as to whether interest is to run from the date of entry of the judgment directed by the court of

appeals or from the date on which the judgment would have been entered in the district court except for the erroneous ruling corrected on appeal. In *Briggs v. Pennsylvania R. Co.,* 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948), the Court held that where the mandate of the court of appeals directed entry of judgment upon a verdict but made no mention of interest from the date of the verdict to the date of the entry of the judgment directed by the mandate, the district court was powerless to add such interest. The second sentence of the proposed rule is a reminder to the court, the clerk and counsel of the *Briggs* rule. Since the rule directs that the matter of interest be disposed of by the mandate, in cases where interest is simply overlooked, a party who conceives himself entitled to interest from a date other than the date of entry of judgment in accordance with the mandate should be entitled to seek recall of the mandate for determination of the question."

10. And no motion to recall the mandate has ever been filed.

$693,805 from a time prior to the judgment on remand.

Accordingly, we reverse so much of the district court's April 15, 1988 judgment as awards interest on the $693,805 prior to April 15, 1988, and we here render judgment disallowing any such interest.

### 2. *$16,430.92 expenses awarded in judgments of August 1, 1986 and August 13, 1988*

■ The City complains that the district court's August 13, 1988 judgment erroneously includes an award to plaintiffs, in the words of that judgment, of "$16,430.92 in expenses previously ordered by the Court," referring to the district court's August 1, 1986 judgment. The City argues, as it did below, that this award is inconsistent with our *Leroy IV* mandate. We agree.

The district court's August 1, 1986 judgment awarded "[t]otal fees and expenses to plaintiffs' lawyers" of "$1,025,232.40"; the judgment reflects that this figure consists of "$984,801.50" in fees and "$40,430.92" in expenses, each allocated to specific attorneys; the expense amount allocated to attorney Mr. Al Greene is shown as "$32,268.64," and this figure has following it a footnote call, the footnote reading "[i]ncludes $12,000 in fees to expert witness Dr. Chandler Davidson and $12,000 for Dr. Richard Murray." *Leroy III*, 648 F.Supp. at 577–78. Plaintiffs argue that on appeal the only expenses we disapproved of were the $24,000 witness fees covered by the referenced footnote, so the remaining $16,430.92 of expenses were undisturbed. Our *Leroy IV* opinion does not specifically refer to the two $12,000 items referenced in the *Leroy III* footnote, nor to their $24,000 total, nor to either of Doctors Davidson or Murray. The references to costs and expenses in *Leroy IV* are few and general,

but do evidence our understanding that approximately $40,000 in costs were awarded and our disapproval of the district court's award of "expert witness fees" (wholly unspecified as to amount or other identifying characteristic).[11] *Leroy IV* does not specifically discuss other portions of the expenses. As previously observed, it concludes by saying:

"After careful review of the record, this court holds that to award $1 million in attorneys' fees *and expenses* was excessive and an abuse of discretion.... We believe a fair, indeed ample award of $693,505 [[12] remunerates the ultimately successful efforts of plaintiffs' counsel and fulfills the goal of the Voting Rights Act. *The excess amount awarded by the district court* was founded on erroneous legal analysis and in part upon an abuse of its discretion. We therefore *vacate the judgment* of the district court, and *remand for entry of a judgment in the amount of $693,805.00.*" *Id.* at 586 (footnote omitted) (emphasis added).

It may be that our *Leroy IV* panel simply overlooked the nonexpert witness portion of the district court's $1,025,232.40 judgment. However, there is nothing ambiguous about what our opinion (and mandate) *decrees.* We expressly "vacate[d]" the district court's judgment, and that obviously means the *entire* judgment, including *all* the expenses included in the $1,025,232.40. "A judgment vacated on appeal is of no further force and effect." *Riha v. International Tel. & Tel. Corp.,* 533 F.2d 1053, 1054 (8th Cir.1976). The $16,430.92 expenses in question were obviously included within the district court's August 1, 1986 judgment and any claim plaintiffs had with respect to those expenses had obviously accrued before that judgment was entered and was included in the claims resolved

---

11. *Leroy IV* commences by describing the award as "attorneys' fees and costs exceeding $1,000,000," *id.* at 578; it later states: "[T]he district court awarded approximately $850,000 in attorneys' fees for 4,659.95 hours.... After applying a contingency multiplier ... and approximately $40,000 in expenses, the total award exceeds $1,000,000," *id.* at 583; it then explains that "expert witness fees" are not recoverable "and

we must reverse this portion of the district court's award," *id.* at 584.

12. This reference to $693,805 is footnoted, with the footnote explaining that it is arrived at by multiplying 4,405.95 attorney hours by an hourly rate of $181 and deducting "13% from the average hourly rate for incomplete time records." *Id.* at 586 n. 16.

thereby. It thus merged into that judgment. We vacated that entire judgment and directed the district court to enter "a judgment in the amount of $693,805," obviously in place of the vacated judgment. What the district court did, in substance, was to instead enter a judgment for $710,235.92. This was clearly prohibited by and contrary to our mandate that the judgment be for $693,805. The fact that we did not expressly address the expenses in question is irrelevant, the point being that we vacated the judgment that included them and directed entry of judgment for a specific figure, which the district court thereafter exceeded. *See Gulf Coast Building and Supply Co. v. Local 480, International Brotherhood of Electrical Workers*, 460 F.2d 105, 107–08 (5th Cir.1972); *Clements v. Steele*, 786 F.2d 673, 675–76 (5th Cir. 1986). *See also, e.g., Calderon v. Presidio Valley Farmers Ass'n*, 863 F.2d 384, 387 (5th Cir.1989); *Farr v. H.K. Porter Co., Inc.*, 787 F.2d 1014 (5th Cir.1986); *Daly v. Sprague*, 742 F.2d 896, 900–01 (5th Cir. 1984).

What our opinion did—namely, vacate the judgment of the district court and direct it to enter a judgment for $693,805, no more and no less—was clear and obvious on the face of the opinion. If plaintiffs felt that this resulted from our having overlooked $16,430.92 of expenses, or was otherwise insufficient or erroneous, they should have moved for rehearing. They never did so, nor ever moved to recall our mandate.

Accordingly, we hold that the district court's judgment of August 13, 1988 violated our mandate insofar as it included, in addition to the $693,805 awarded in its April 15, 1988 judgment entered pursuant to our *Leroy IV* mandate, the sum of $16,430.92 as a portion of the expenses included in the $1,025,232.40 August 1, 1986 judgment of *Leroy III*. We render judgment in favor of the City as to such $16,430.92.

3. *Attorneys' fees and expenses incurred from August 1 1986 through July 22, 1988*

The district court's August 13, 1988 judgment also awarded plaintiffs $311,625 attorneys' fees and $16,488.57 expenses, a total of $328,113.57, for services performed and expenses incurred after August 1, 1986 and through July 22, 1988. The City makes essentially two challenges to this $328,113.57.

(a) Leroy IV mandate

█ The City contends that plaintiffs are entitled to no attorneys' fees or expenses for the period August 1, 1986 through January 8, 1988, the date of our *Leroy IV* mandate, because, though our *Leroy IV* opinion was silent as to costs, our mandate provided that "costs on appeal be taxed equally against the parties, said costs to be taxed by the Clerk of this Court." The City argues that this language of our *Leroy IV* mandate in effect denied plaintiffs costs on the City's appeal of *Leroy III* and hence likewise denied attorneys' fees in respect to such appeal because the relevant statute, 42 U.S.C. § 1973*l* (e), authorizes attorneys' fees only "as part of the costs," citing, *inter alia, Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (attorneys' fees part of costs for purposes of Eleventh Amendment), and *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985) (attorneys' fees under 42 U.S.C. § 1988 are part of "costs" for purposes of Fed.R.Civ.P. 68, so that prevailing party who does not achieve an award more favorable than the Rule 68 settlement offer is not entitled to attorneys' fees incurred after the offer).

While a certain formal logic supports the City's position, and it is not without force, we nevertheless ultimately must reject it. We recently rejected a similar contention in respect to the Clayton Act's provision for recovery of "the cost of suit, including a reasonable attorney's fee," 15 U.S.C. § 15(a). *Sciambra v. Graham News*, 892 F.2d 411, 414 (5th Cir.1990). We there stated that "the routine allocation of appellate costs pursuant to Rule 39 of the Federal Rules of Appellate Procedure is distinguishable from the recovery of attorneys' fees," *id.*, citing *Chemical Mfrs. Ass'n v.*

*U.S.E.P.A.*, 885 F.2d 1276 (5th Cir.1989), which dealt with attorneys' fees under 33 U.S.C. § 1369(b)(3) (prevailing party may be awarded "costs of litigation (including reasonable attorney and expert witness fees)"). *Chemical Mfrs. Ass'n* observes that "[b]y stating that each party was to bear its own costs, we did not rule inferentially that NRDC was not entitled to attorney's fees.... As used in Rule 39, 'costs' merely refers to the expenses of docketing an appeal or preparing and filing briefs and records." *Id.* at 1278. Further, in *Robinson v. Kimbrough*, 652 F.2d 458, 463 (5th Cir.1981), we rejected an argument similar to that the City now makes respecting attorneys' fees under section 1988. The Sixth Circuit likewise rejected the City's contention in this respect as to attorneys' fees under section 1988 in *Kelley v. Metropolitan County Bd. of Educ.*, 773 F.2d 677, 681–82 (6th Cir.1985) (en banc), *cert. denied*, 474 U.S. 1083, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986), which we cited in *Chemical Mfrs. Ass'n* 885 F.2d at 1278 n. 5. *See also Seyler v. Seyler*, 678 F.2d 29, 31 (5th Cir.1982).

At the time of the district court's August 1, 1986 judgment, plaintiffs had incurred no post-August 1, 1986 attorneys' fees, no cause of action or claim for such had accrued, it was not inevitable that there would be any such, and plaintiffs had not sought post-August 1, 1988 attorneys' fees. Thus, when the district court rendered its August 1, 1986 judgment, the matter of post-August 1, 1986 attorneys' fees was not before it, and that judgment does not, and does not purport to, either entitle or deny entitlement to any such fees or in any way deal with them. All that was before us in *Leroy IV*, was the district court's August 1, 1986 judgment, and our opinion does not purport to deal with anything else.

We hold that our *Leroy IV* mandate does not operate to deny plaintiffs any post-August 1, 1986 attorneys' fees or expenses to which they would otherwise be entitled.

(b) Amount of post-August 1, 1986 award

The City's remaining contention is that the $328,113.57 awarded by the August 13, 1988 judgment (and by the January 6, 1989 judgment) for attorneys' fees and expenses from August 1, 1986 through July 22, 1988 is grossly excessive and improper.[13]

■ Attorneys' fees awards are reviewed under an abuse of discretion standard. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); *Rendon v. AT & T Technologies*, 883 F.2d 388, 399 (5th Cir.1989).[14] While we rarely find such an abuse, this does not mean that our review is simply a rubber stamp, and "we cannot shirk our responsibility under the law" where it is evident that the district court has abused its discretion. *Leroy IV* at 586. In evaluating an attorneys' fees award, we are guided by the overriding principles that " 'a reasonable attorney's fee' is one that is 'adequate to attract competent counsel, but ... [that does] not pro-

---

**13.** Subject to its contention regarding the costs on appeal provisions of our *Leroy IV* mandate (a contention that we have overruled), the City has not claimed that plaintiffs were not in any respect a prevailing party in *Leroy IV* and thus were entitled to no post-August 1, 1988 attorneys' fees (or no attorneys' fees for defending the City's appeal to this Court in *Leroy IV*). Nor has the City contended that the relevant attorneys' fees statute does not authorize attorneys' fees for prosecuting an attorneys' fees claim, or defending an attorneys' fees award, thereunder. *See Cruz v. Hauck*, 762 F.2d 1230, 1233–34 (5th Cir.1985); *Knighton v. Watkins*, 616 F.2d 795, 800 (5th Cir.1980); *Johnson v. State of Mississippi*, 606 F.2d 635, 638 (5th Cir.1979). While the foregoing cases involve section 1988, and this case is predicated upon section 1973*l* (e), we noted in *Leroy IV* that with respect to attorneys' fees (albeit in a general sense, as opposed to speaking directly to this specific issue) section 1973*l* (e) should be construed consistently with section 1988. *Id.* at 579 n. 4.

**14.** One of the reasons for the district court's having discretion was stated in *Hensley* as being "the district court's superior understanding of the litigation." 103 S.Ct. at 1941. This consideration is of somewhat less force in this case, as the great majority of the attorney time here in issue was not spent in relation to proceedings then before the district court; rather, such time was spent in proceedings before this Court in *Leroy IV*, and, to a lesser extent, in responding to the City's application for writ of certiorari and in settlement negotiations after the *Leroy IV* oral argument in this Court and before this Court's opinion therein issued.

duce windfalls to attorneys,'" *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) (quoting S.Rep. No. 94–1011, p. 6, 1976 U.S.Code Cong. & Admin.News 1976, pp. 5908, 5913), and that "the 'product of reasonable hours times a reasonable rate' normally provides a 'reasonable' attorney's fee within the meaning of the statute." *Id.* (quoting *Hensley*, 103 S.Ct. at 1940).[15] Hours which, though actually expended, nevertheless "are excessive, redundant, or otherwise unnecessary," or which result from the case being "overstaffed," are *not* hours "'reasonably expended'" and are to be excluded from this calculation. *Hensley* at 1939–40. *See also Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir.1982) ("there should have been no compensation for hours spent in duplicative activity or spent in the passive role of an observer while other attorneys performed"). "'[B]illing judgment'" is to be exercised "with respect to hours worked," *Hensley*, 103 S.Ct. at 1941, consistent with the requirement that "'[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.'" *Id.* at 1940 (emphasis in original). "[T]he burden of proof of reasonableness of the number of hours is on the fee applicant, *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941, and not on the opposing party to prove their unreasonableness." *Leroy IV* at 586.

Further, while the hourly rates are to be "'adequate to attract competent counsel,'" *Blum*, 104 S.Ct. at 1548, and computed "according to the prevailing market rates in the relevant community," *id.* at 1547, nevertheless the "measure" is not the rates which "lions at the bar may command." *Van Ooteghem v. Gray*, 774 F.2d 1332, 1338 (5th Cir.1985). This is at least true, it

seems to us, where, to borrow statements in *Blum* made in a slightly different context, "the experience and special skill of the attorney" does not result in "the expenditure of fewer hours than counsel normally would be expected to spend." *Blum*, 104 S.Ct. at 1549. This simply reflects the common sense truth that as between attorneys competent to handle a given task, generally the one who is entitled to higher hourly compensation because of greater experience and skill may reasonably be expected to accomplish the task in fewer hours. Of course, as to some tasks, generally more routine ones, it often may not be reasonable to expect any significant reduction in the hours required by virtue of a particular attorney's greater than normal experience and skill. But as to such tasks, hourly rates near the top of the scale will nevertheless generally be inappropriate if in the particular context the task could have been properly accomplished with greater overall cost efficiency by competent personnel whose lesser experience and skill would not justify such high rates. *Cf. Flowers* at 707 ("Certainly, the base rate for time spent on computing and enforcing attorneys' fees should be less than that allowed for professional services rendered primarily on the merits.").

Plaintiffs requested that the district court award them compensation for a total of 1,282.73 hours for the period August 1, 1986 through July 22, 1988, the three principal attorneys, Messrs. Greene, Korbel, and Botello, who accounted for all but 33.5 of these hours, requesting $250 an hour for all of their time.[16] The requested hours constituted all the hours plaintiffs claimed to have spent on the case, and no recorded time was excluded in the exercise of "bill-

---

**15.** *See also Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989): "'The purpose of § 1988 is to ensure "effective access to the judicial process" for persons with civil rights grievances,'" *id.* 109 S.Ct. at 945, and "the very nature of recovery under § 1988 is designed to prevent any such 'windfall' [to attorneys]. Fee awards are to be reasonable, reasonable as to billing rates and reasonable as to the number of hours spent in advancing the successful claims." *Id.* at 946.

**16.** The hours requested were: Mr. Jesse Botello, 368; Mr. L.A. ("Al") Greene, 295.48; Mr. George Korbel, 582.75; Mr. Frumencio Reyes, 3 ($250/hour); Mr. Craig Washington, 8.4 ($200/hour); Mr. Sidney Bracquet 20.6 ($125/hour); Mr. Pat Wiseman, 4.5 ($250/hour). Mr. Korbel's request extended through July 26, 1988.

ing judgment." [17] While there were affidavits indicating that records showed expenditure of virtually all the time claimed, the record notations were in the vast majority of instances very brief, and often were not illuminating as to the subject matter, such as innumerable entries for "TC GK" (or "TC" some other initials), or were vague as to precisely what was done, such as huge blocks of time under "Work on Brief" and "Continue work on brief" and "Review for Oral Argument." Nearly all of the entries showed only one undivided total amount of time on any one date. The district court accepted virtually all of plaintiffs' requested hours, awarding them 1,258.48 hours, all at their requested rates ($250 an hour, except for 29 hours). With one exception, the district court's opinion gives no explanation of its three tiny deviations from plaintiffs' request.[18]

Plaintiffs also requested, and the district court awarded in full, $16,488.57 of post-August 1, 1986 attorney expenses. These expenses included $8,087.50 in fees paid to outside lawyers for their help and advice on the case ($6,287.50 of which was 25.15 hours at $250 per hour), and $2,880 in paralegal charges (64 hours at $45 an hour).

The district court noted that "Houston claims that the number of hours spent by Plaintiffs on the appeal and related issues was unreasonable; that Plaintiffs sought time for issues upon which we [sic] did not prevail on appeal; that Plaintiffs failed to exercise enough 'billing judgment'; and that the hourly rate which [ ] requested is in excess of the prevailing rate in Houston" and that "Houston continues to claim that the case was overstaffed." It rejected these arguments, but did so with little more than conclusory justification, particularly as to the claimed excessiveness of the hours. Plaintiffs did not breakdown for the court, and the court did not separately analyze, the number of hours, and the reasonableness thereof, spent on the various discrete tasks, such as the appellees' brief (much less different issues addressed therein), the oral argument, the response to the application for writ of certiorari, and the work in the district court following our remand (either as a whole, or as to its various component parts).[19]

---

**17.** Mr. Korbel did testify that when he worked large blocks of time on a given day at Mr. Botello's office, in estimating the amount of time he worked on this case he would enter in his records a lesser amount than the total he was at Mr. Botello's office "because I would get phone calls related to other matters."

**18.** The district court's fee award was as follows:

| Attorney | Hours | Hourly Rate | Fee Award |
|---|---|---|---|
| Botello | 360.25 | $250 | $ 90,062.50 |
| Greene | 283.48 | 250 | 70,870.00 |
| Korbel | 582.75 | 250 | 145,687.50 |
| Reyes | 3.00 | 250 | 750.00 |
| Washington | 8.4 | 200 | 1,680.00 |
| Braquet | 20.6 | 125 | 2,575.00 |
| Totals | 1.258.48 | | $311,625.00 |

No recognition or explanation is given for reducing Mr. Botello's award from the 368 hours requested. Since Mr. Greene's records showed that 12 hours of the 295.48 hours claimed were expended prior to July 24, 1986 (all in "TC GK"), we infer that this accounts for the reduction to 283.48 hours in Mr. Greene's award, although there is no recognition or explanation of this by the district court. Moreover, Mr. Korbel's records showed that his requested 582.75 hours likewise included some

11.5 hours prior to July 24, 1986 (virtually all "Call[s] to Greene"), and there was no reduction for (or notice of) this by the district court. The district court made no award to Mr. Wiseman (who claimed 4.5 hours at $250 an hour), stating: "[T]here was no evidence presented regarding Mr. Wiseman's hours or his fees."

**19.** The district court also criticized the City for relying mainly on cross-examination, and not presenting its own evidence. But, as we noted in *Leroy IV*, it was the plaintiffs' burden to show that the amount of time expended was reasonable, and this showing could not properly be made without some breakdown as to the separate functions performed and the number of hours devoted to each. Moreover, the cryptic nature of the plaintiffs' records did much to frustrate the City's cross-examination. For example, Mr. Botello's affidavit showed over an hour every day (except one) from December 8 through December 22, 1986 with the only entry (except for December 19) being "Work on Brief," the total time being 48.25 hours. When asked what work he did that was represented by the December 8 through 18 entries (totaling twenty-nine hours), Mr. Botello could only say that he could respond if he had his file with him. Mr. Greene was unable to explain a 6.5 hour entry for October 15, 1987—months after argument and briefing in this Court but before

Because of the nature of plaintiffs' evidence, it is difficult to reconstruct just how many hours they spent on which tasks, although where the records are not illuminating some assumptions can be made by correlating the dates the time was incurred to the major events in the case. In post-argument memoranda, the parties have submitted their estimates as to the allocation of the total hours claimed by plaintiffs.

Plaintiffs make the following estimates:

(i) services in this Court in *Leroy IV*, 544 hours, of which 115 hours are allocable to oral argument;

(ii) responding (in April 1988) to the City's application for writ of certiorari (filed late March 1988), 90.65 hours;

(iii) settlement negotiations, in response to a suggestion from a *Leroy IV* panel member at oral argument, undertaken from then until some time prior to our *Leroy IV* opinion, 68.15 hours;

(iv) services in the district court following the *Leroy IV* mandate until the April 15, 1988 judgment, 58.1 hours;[20]

(v) services in the district court from April 15, 1988 to approximately June 8, 1988, in collection of the April 15 judgment, 101.7 hours;

(vi) services in the district court from May 3, 1988 through July 1988 establishing their attorneys' fees recovery for services since August 1, 1986, 159.33; and,

(vii) the remaining time not subsumed in any of the above is some 236.55 hours (calculated by subtracting the total of the foregoing categories from the 1,258.48 hours awarded by the district court). Plaintiffs describe this time by stating only that it "includes extensive client conferenced required by the fact that one of our named plaintiffs was an [*sic*] sitting city councilman and another was a member of congress. In other words, it was particularly important that we keep them well informed of the proceedings. There were also many other conferences among the plaintiffs' lawyers involving possible settlement suggestions by the City."[21]

■ We conclude that the hours awarded are grossly excessive and that the district court abused its discretion in determining they were reasonably expended.

As noted, the plaintiffs calculate that they have charged 544 hours to their services in this Court (we have figured 638.25 hours and the City says 616.5). The end product of this vast amount of time—over thirteen weeks at forty hours a week using plaintiffs' figures—was essentially no more than one sixty-eight-page brief appellees' brief and an oral argument that would not have exceeded approximately one hour in all, plaintiffs' part being no more than about a half hour.[22] Plaintiffs' lawyers, who prepared this appellees' brief and orally argued the case, by no means had to start from scratch, as they had tried *Mann* and had briefed and argued it on appeal,

---

our opinion was issued—labeled "Conference at my office with George and Jesse; Research on case." Nor was any explanation offered by Mr. Korbel or Mr. Botello, whose records have no October 15, 1987 entry. Both Mr. Korbel's and Mr. Greene's records showed relatively small amounts of time recorded for talking to the media.

**20.** Plaintiffs give the date as May 15, 1988, referring to the "Judgment on Remand"; we assume this is an unintentional error, as the only judgment on remand was April 15, 1988.

**21.** The City's calculations of plaintiffs' claimed time are as follows: 616.5 hours in this Court through the issuance of our mandate, of which 142 hours are allocable to oral argument; 75.25 hours responding to application for certiorari; 71.25 hours in the district court from the is-

suance of our opinion to April 15, 1988; 337.23 hours after April 15, 1988 (apart from responding to the application for certiorari).

We have made the following estimates: 638.-25 hours in this Court (of which 35.30 hours were after oral argument, including review of our opinion, of the City's suggestion for rehearing en banc, getting ready to file a response to it if requested—none was—, and review of our mandate); 92.9 hours responding to application for certiorari; settlement negotiations following oral argument here and before issuance of our opinion, 62.9 hours.

**22.** The appellants' brief of the City in *Leroy IV* was forty-eight pages; the City's reply brief was twenty-two pages. The United States also filed a thirty-four-page amicus brief, arguing that time spent on the section 5 preclearance process was not compensable; plaintiffs did not prevail on this issue in *Leroy IV*.

and had tried *Leroy I* and *Leroy II* (to the extent those cases were tried) and *Leroy III.* They were thus presumably familiar with the record. Further, they had filed in the district court in *Leroy III* one post-trial brief of over one hundred pages and also a reply post-trial brief of over thirty pages, so their legal research and the organization of the factual and legal theories should have been well developed. They have been amply compensated for *all* this time. The question is, how much *more* time was reasonable to expend defending the district court's judgment on appeal.[23] The issues in *Leroy IV* were not extraordinarily complex, difficult, or novel. While the *Leroy III* trial was not short, neither was it exceptionally long. Plaintiffs' brief on appeal was clearly good, but it was not exceptional. The task of defending on appeal a bench-tried, fact-intensive award of attorneys' fees is not generally a daunting one. Nor were plaintiffs successful in all but minor aspects of the appeal. They not only lost on the *Leroy I* and the section 5 administrative work issues, but also on other aspects of the appeal, with the end result that the award was reduced by nearly a third (32.33 percent).[24]

Moreover, it is significant that the plaintiffs expended a total of 425 hours in briefing and arguing the *Mann* appeal. The *Mann* appeal thus involved an expenditure of only seventy-eight percent (or less) as much attorney appellate time as did the *Leroy III* appeal (544 hours on plaintiffs' breakdown). Yet *Mann* was the *merits* case; *Leroy III* was just the attorneys' fees, which should be easier and take less time and is clearly less closely connected to the underlying civil rights litigation with which Congress was concerned. *See Flowers*, 675 F.2d at 707. Moreover, in *Mann*, plaintiffs were appellants, who bear a significantly more difficult task than do appellees, which plaintiffs were in the appeal of *Leroy III.* It has been recognized in attorneys' fees cases that it is normally reasonable to expect more time to be expended by an appellant than an appellee. *See Craik v. Minnesota State University Board*, 738 F.2d 348, 349 (8th Cir.1984). Further, the *Mann* trial took some five and a half weeks, more than two and a half times the length of the *Leroy III* trial.[25]

Neither the district court nor plaintiffs offer any meaningful explanation of the facially inordinate amount of time which plaintiffs' attorneys devoted to the proceedings in this Court in *Leroy IV*, and none is apparent from the record. Plaintiffs suggest that they represented different clients, thus necessitating some duplication of ef-

---

**23.** Plaintiffs' task on appeal, both as to the legal research and factual organization, would also have been considerably eased by the district court's lengthy *Leroy III* opinion.

**24.** While this reduction was not of such magnitude as to deprive plaintiffs of prevailing party status, it nevertheless was clearly substantial enough to warrant some fee reduction. "That the plaintiff is a 'prevailing party' therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Hensley*, 103 S.Ct. at 1941. Reduction on this account is particularly apt as applied to defending an attorneys' fees judgment that is substantially erroneous. *See also Commissioner, INS v. Jean*, —— U.S. ——, —— n. 10, 110 S.Ct. 2316, 2321 n. 10, 110 L.Ed.2d 134 (1990), where the Court stated:

"Because *Hensley*, 461 U.S. at 437, [103 S.Ct. at 1941], requires the district court to consider the relationship between the amount of the fee awarded and the results obtained, fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation. For example, if the Govern-

ment's challenge to a requested rate for paralegal time resulted in the court's recalculating and reducing the award for paralegal time from the requested amount, then the applicant should not receive fees for the time spent defending the higher rate."

Moreover, we conclude that the claims for attorneys' fees in *Leroy I* and the section 5 preclearance proceedings should be treated as "unrelated" to the other attorneys' fees claims under *Hensley* because *Leroy I* was a wholly separate suit, in which attorneys' fees had been denied, and the section 5 proceedings before the Department of Justice were likewise not a part of and were separate from and not functionally related to *Leroy II* or *Mann*, all of which we held in *Leroy IV.*

Plaintiffs' records and other evidence do not distinguish between hours spent on the different issues in *Leroy IV.*

**25.** Moreover, plaintiffs' lawyers were at least eight years more experienced when *Leroy III* was appealed than when *Mann* was, and presumably should have been able to operate with somewhat greater efficiency.

fort.[26] However, in the litigation at issue, the real parties in interest are the lawyers themselves, and they have not filed separate briefs or motions but have rather proceeded as a single unit, and there is no apparent conflict or differing positions as among them (nor have they articulated any, and indeed on the present appeal they are all represented by the same "outside counsel"). This "explanation" can at best legitimately account only for a minute fraction of the excessive time. As to the oral argument, plaintiffs offered the explanation below that each of three of them (Messrs. Greene, Korbel, and Botello) fully prepared to argue the entire case in order to guard against the eventuality "that one or the other of us became unable to argue," although no reason was suggested why this might be more likely in the situation of any of these three individuals than with any other lawyer in any other case.[27] This explanation is wholly without arguable merit on its face.

There is no mathematical formula to precisely calibrate the number of hours reasonably necessary for appellate representation. Basically, we agree with what Mr. Botello said below when asked by the City how it could determine whether the number of hours spent by plaintiffs on appeal was reasonable, namely: "You could do what most lawyers do, which is to calculate, just by their own common sense, how much time a brief of this magnitude takes to put together." Using our common sense, informed by years of experience with briefing and arguments in this Court, and what the record reflects concerning the

prior work plaintiffs had done on the case, we can only conclude that the appellate hours claimed were manifestly and grossly excessive. What we said in *McGowen v. King, Inc.*, 661 F.2d 48, 50 (5th Cir.1981), as to an inadequate award for attorneys' fees is fully applicable to the present excessive award, *viz.*:

> "The adequacy of an award of attorney's fees, like many other decisions that cannot be made with formulaic precision, rests on the sound discretion of the trial judge. We do not make this precept mere cant by petty interference with the exercise of that discretion. When, however, the trial judge's decision so far transgresses the bounds of informed judgment as to be manifestly unsound, we are compelled reluctantly to substitute our judgment for his."

We conclude that for lawyers of $250 an hour competence, who had had (at the City's expense) the extensive compensated experience and preparation in this very case that these plaintiffs had had, 250 hours is indeed ample time for the work performed in this Court on the case. This produces a $62,500 fee award, which we discount by ten percent to $56,250 to account for the limited success.[28] *Cf. Flowers*, 675 F.2d at 707 (denying attorneys' fees for defending on appeal an attorneys' fees award that we substantially reduced and affirmed as modified). Indeed, we only arrive at a figure this high because of the City's having advised us that it does not object to a fee award of between $50,000 and $60,000 in this respect (see note 29, *infra*).

---

**26.** Our reading of the record is that all the attorneys represented all the plaintiffs on the merits, and in any event they operated as a unit filing single briefs and motions and the like and not articulating different positions.

**27.** Mr. Botello informed the district court: "I can tell the court that Mr. Korbel, Mr. Greene and myself prepared extensively. We did not make a decision until the last moment as to who was going to argue or what combination of attorneys were going to argue. And we did that for a reason. That was in the event that one or the other of us became unable to argue, that the other attorneys would be fully prepared to do so, and our strategy in preparation necessitated all three

of us to go over the record, to refer to notes, to come up with strategies and come up with ideas, and that's why we had three attorneys present for the oral argument."

**28.** *Cf.* Griffin B. Bell, "Maintaining the Quality of the Federal Appellate Bench", *The Federal Appellate Judiciary in the 21st Century* (Federal Judicial Center 1989) at 21: "The only bargain left in the federal judiciary is to take an appeal. You can spend a million dollars litigating a case in the district court, and for $50,000 you can get a fine appeal in the most complex case." While we do not take this comment one hundred percent literally, we consider its thrust instructive.

■ Our approach is similar regarding the some 236 "miscellaneous" hours claimed (category (vii) above). The tendered explanation of keeping important clients informed and conferences with each other regarding possible settlements (to the extent not subsumed in the 68.15 hours allocated to settlement efforts and the other categories) is wholly insufficient. The time records simply do not show anywhere near that amount of time devoted to those activities. Even if they did, it would be clearly excessive. The real parties in interest were the attorneys themselves, not the merits clients. We simply cannot countenance such globular, unsupported claims. We conclude that a $4,000 award is more than adequate in this respect.

■ For the response to the petition for certiorari (category (ii) above), plaintiffs allocate 90.65 hours, which they admit "would normally be high," although requesting that in this respect consideration be given to "the diversity" of the attorneys. As previously noted, this explanation is wholly insufficient. For $250-an-hour counsel, with the extensive experience and preparation already in the case at that stage, 50 hours is more than adequate time for responding to the application for certiorari, particularly with the surgery already performed by *Leroy IV*. We hold that $12,500 is ample for compensation in this respect.[29]

■ We turn to the 68.15 hours plaintiffs allocate to settlement negotiations in the months between the oral argument and issuance of opinion in *Leroy IV* (category (iii) above). Although one of the judges on the *Leroy IV* panel had suggested from the bench at oral argument that settlement be pursued, this can hardly be considered as a directive to the City to pay the plaintiffs over $17,000 for the privilege of talking settlement with them. The case and its issues, and the amounts involved, were well developed by that stage, and nothing approaching 68 hours was necessary to fulfill any duty to this Court to reasonably explore settlement. Moreover, the plaintiffs were also the clients, and some of the time they devoted to the settlement is properly chargeable to them as clients, rather than as attorneys or officers of the court as such. We hold that $8,000 is ample compensation for these settlement efforts.

■ With respect to the 58.1 hours claimed by plaintiffs in procuring the April 15, 1988 judgment (category (iv)), it is clear that most of these hours are the result of plaintiffs' insistence that this judgment include interest since August 1, 1986, and also $16,430.92 of expenses that had been included in the August 1, 1986 judgment.[30] The City clearly made known to plaintiffs and to the district court its position, and supporting authority, that the inclusion of either item violated this Court's *Leroy IV* mandate, and that plaintiffs' only recourse was to seek this Court's modification of that mandate. We have held that the City was and is right as to both of these points. Moreover, it was clear that the City did not oppose the entry of a judgment with interest from its date in the amount of $693,805 as specified in our *Leroy IV* mandate. In sum, the vast majority of their 58.1 hours is allocable to matters on which plaintiffs have not ultimately prevailed. *Cf. Reeves*, 705 F.2d at 753 (although we modified our mandate, we refused to allow fees for seeking interest prohibited thereby in the district court and for subsequent appeal to this Court); *Flowers*, 675 F.2d at 707 (attorneys' fees on appeal denied). We deter-

---

**29.** The City has indicated that $50,000 to $60,000 is not unreasonable for services on an appeal (including all the settlement discussions between oral argument and decision in *Leroy IV*)—subject to their contention (which we have rejected) that our *Leroy IV* mandate precludes any such award—and that an appropriate range for responding to the application for writ of certiorari is $10,000 to $12,000. We have taken these concessions by the City into account.

**30.** In its April 15, 1988 judgment the district court agreed with plaintiffs as to the interest, but withheld decision as to the $16,430.92 expenses, principally because it was unclear whether any of those were attributable to *Leroy I* or the administrative work with the Justice Department respecting section 5 preclearance. Eventually determining that none of the expenses fell into either such category, the district court included them in its August 13, 1988 judgment.

mine that an appropriate award in reference to the April 15, 1988 judgment is $4,000.

■ The plaintiffs also claim 101.7 hours for collection efforts in reference to the April 15, 1988 judgment (category (v)). It appears that all or nearly all of the time expended in this connection occurred after May 16, 1988, when the Supreme Court denied the City's certiorari application and the City gave notice of appeal from the April 15 judgment. The collection efforts involved serving a writ of execution on an assistant city attorney, which was returned unsatisfied, taking the Mayor's videotaped deposition, and a June 2 hearing on the City's motion to quash the deposition and for a stay of the April 15 judgment.[31] The City had long made clear that it had no objection to plaintiffs' February 1988 request for judgment insofar as the district court granted it on April 15, 1988, *except* for the inclusion of interest from August 1, 1986 to April 15, 1988. At the June 2 hearing the City again made plain that it viewed the inclusion of the August 1, 1986 to April 15, 1988 interest as a violation of this Court's mandate and the second sentence of Rule 37. When asked by the court why it did not pay the balance, the City responded "we view the judgment as unitary. We cannot partially satisfy it." After again clearly stating that it did not dispute that the balance of the April 15 judgment was proper and presently due, the City suggested to the district court that it partially grant the City's motion for stay by staying only that part of the April 15 judgment that provided for interest prior to that date. The City also pointed out that it had ample funds available to pay the judgment and that under Fed.R.Civ.P. 69 execution against the City was improper and any enforcement of judgment should be by mandamus or under Fed.R.Civ.P. 70 as interpreted by this Court in *Gates v. Collier,* 616 F.2d 1268 (5th Cir.1980). The City objected to taking the Mayor's deposition as wholly unnecessary and inappropriate. The district court denied the requested stay entirely, and allowed the Mayor's deposition to be taken (indeed videotaped despite the City's also objecting to that), plainly in aid of the execution.[32] The Mayor's deposition was taken and videotaped June 3.[33] On June 6 the district court entered an agreed order granting in part and denying in part the City's motion for stay by staying so much of the April 15 judgment as awarded interest prior to its date; the June 6 order also directed the City to pay "within ten days of this order" the $693,805 provided for in the April 15 judgment, with interest thereon since April 15.[34] This sum was paid by the City two days later.

The City was correct that execution was improper. Under Rule 69(a), applicable to money judgments, "execution" and "proceedings supplementary to and in aid of a judgment" are governed by state practice and procedure except to the extent some federal statute is applicable. *See* Wright & Miller, *Federal Practice and Procedure: Civil* § 3012; *Hayes v. Schaefer,* 399 F.2d 300, 301 (6th Cir.1968) (state law governs "whether the property ... is subject to levy of execution and sale."). Under Texas law, execution may not be levied on property belonging to a city in its governmental or municipal character, Texas Constitution, Article 11, § 9; 34 Tex.Jur. III, *Enforcement of Judgments,* § 39, and the proper way to enforce a money judgment against a City is by mandamus. 52 Tex.Jur. III, *Municipalities,* § 474. Additionally, we have held that under Rule 70 a federal court may enforce a money judgment

---

**31.** Some time may also have been expended in reference to the City's unsuccessful effort in this Court to procure a stay.

**32.** In allowing the deposition the court stated this was "to find out where the buck stops" so that "then at least then your writ of execution, you will secure the 693" (obviously referring to the $693,805 awarded in the April 15 judgment).

**33.** Plaintiffs' request for fees includes numerous hours of preparation for and deposing of the Mayor on the part of three or four lawyers for the plaintiffs, all requesting $250 an hour.

**34.** The order further specified that such "payment" would be without prejudice to any contention "that interest, fees on appeal, or expenses of any sort or [*sic*], are or are not, properly allowable."

against a state or local government by ordering the defendant to pay it. *Gates.* Moreover, the record shows that the plaintiffs were aware of *Gates* and that execution was at least likely improper, and employed it not for the purpose for which it was intended but rather "to emphasize the matter to the City Attorney's office." [35]

Under the circumstances, we hold that $5,000 is an ample attorneys' fee award for plaintiffs' collection efforts respecting the April 15 judgment.[36]

 This leaves for consideration, respecting the fee component of the August 13, 1988 judgment, the 159.33 hours plaintiffs claim were expended in *proving up* in the district court the attorney hours they had incurred since August 1, 1986, and their entitlement to recover for same (category (vi)). This process essentially began with one or two page motions, with supporting verified abstracts of time records, filed by plaintiffs in the district court May 3, 1988. Thereafter, a response by the City was filed May 9; plaintiffs' twenty-three page brief in support and their seventeen page supplemental memorandum (and proposed findings and conclusions) were filed respectively May 23 and July 22; and several sets of updated time record abstracts were filed. A one day hearing was held on July 22, 1988, and thereafter the district court rendered its August 13, 1988 judgment. Given plaintiffs' limited ultimate success, the relatively routine or mechanical nature of much of the time in this connection, and the evident over-staffing,

we conclude that an award of $250 an hour for all this time ($39,832.50) is clearly excessive, and that an ample award is $18,000 (90 hours at $200 an hour).

Thus, with respect to that portion of the district court's August 13, 1988 judgment as awards post-August 1, 1986 fees and expenses, we affirm the $16,488.57 expense award (which is essentially unchallenged) and we reduce the amounts of fees awarded from $311,625 to $107,750,[37] all such amounts to bear interest from August 13, 1988, at the rate of 7.95 percent per annum. We have also eliminated from the August 13, 1988 judgment the entirety of the $16,430.92 award for expenses included in the August 1, 1986 judgment.

### 4. *Attorneys' fees this appeal*

"We are empowered to make an award for the services rendered in this court," *Davis v. Board of School Commissioners,* 526 F.2d 865, 868 (5th Cir.1976), and we deem it appropriate to do so in this instance in order to bring this long pending fee dispute—in which the merits were resolved more than a decade ago—to a conclusion.[38] Although we conclude that plaintiffs have sufficiently prevailed, at least in the City's appeals from the August 13, 1988 judgment (and that of January 6, 1989), to cross the "prevailing party" threshold, nevertheless a substantial reduction in their fee recovery is appropriate because of the distinctly limited nature of that success. *Cf. Flowers* (denying appellate fees).[39] We

---

**35.** Thus Mr. Botello testified below:

"A. ... [T]here was a question in our minds and a lot of other people's minds as to whether or not a writ of execution could lie against a municipality.

"Q. And did you determine that question?

"A. Yes, sir, we did.

"Q. And what did you find out?

"A. We found out that we could do it in a much simpler way by invoking the federal judge's authority to enforce her own judgments. But we also felt that the writ of execution process was also necessary to attempt to bring the city attorney's office to—*to emphasize the matter to the city attorney's office.*" (Emphasis added).

**36.** We note that plaintiffs' claimed expenses include some $6,287.50 in outside attorneys' fees entirely attributable to this phase of the case.

This award has not been specifically challenged by the City and we do not disturb it.

**37.** $56,250 services in this Court in *Leroy IV;* $12,500 response to petition for certiorari; $8,000 settlement negotiations; $4,000 miscellaneous time; $4,000 motion for judgment; $5,000 enforcement of April 15, 1988 judgment; $18,000 establishing post-August 1, 1986 fees and expenses.

**38.** Plaintiffs advise us that they have expended a total of 208 hours, and $1,168.71 expenses, on these consolidated appeals (through their initial post-argument memorandum).

**39.** With respect to the April 15 judgment, plaintiffs have entirely lost the only issue that was ever contested. With respect to the August 13,

conclude an award of $20,000 fees, plus $1,168.71 expenses, is appropriate under the circumstances for all services in this Court since May 16, 1988 (when the City's notice of appeal in our No. 88–2506 was filed) and through the issuance of our mandate herein.

### Conclusion

In sum, we: (1) modify the district court's April 15, 1988 judgment to eliminate therefrom all interest prior to April 15, 1988, and affirm the April 15, 1988 judgment as so modified; (2) vacate the judgments of August 13, 1988 and January 6, 1989, and in lieu thereof here render judgment for the plaintiffs and against the City for the total sum of $124,198.57 ($107,750 fees plus $16,488.57 expenses, all post-August 1, 1986) together with interest thereon at 7.95 percent from August 13, 1988, plus all unpaid costs of court (other than attorneys' fees and expenses) in the district court, this judgment to be in addition to that of April 15, 1988 (as here modified); (3) we also here render a further judgment in favor of plaintiffs and against the City, in respect to attorneys' fees and expenses in this Court in these consolidated appeals through the issuance of our mandate herein, in the sum of $21,168.71 ($20,000 fees, $1,168.71 expenses), together with interest thereon from the date of this opinion at the legal rate on said date; (4) we decree that the judgments herein provided for embrace all of plaintiffs' claims against the City for attorneys' fees and expenses in respect to this litigation through the issuance of our mandate herein; (5) we hereby order the City (which has paid in full the April 15, 1988 judgment as here modified) to pay to plaintiffs, within 15 days from the issuance of our mandate herein, the full amounts (including interest) of the judgments provided for in (2) and (3) above. Each party shall bear its own costs (other than attorneys' fees and expenses here adjudged) on this appeal.

No. 88–2506, Judgment MODIFIED and AFFIRMED as modified.

1988 judgment, their total recovery has been reduced from $344,544.49 (inclusive of $16,430.92 of pre-August 1, 1988 expenses) to $124,-

Nos. 88–2813 and 89–2180 Judgments VACATED and Judgment RENDERED for appellees.

198.57; in other words, they have sustained only about 36 percent of the August 13, 1988 judgment.